ECKSTROM INDUSTRIES,
INC., Plaintiff,

v.

The UNITED STATES, and The United
States Department of Commerce,
Defendants.

Slip Op. 98–150.
No. 97–10–01913.

United States Court of
International Trade.

Oct. 28, 1998.

Powell, Goldstein, Frazer & Murphy, LLP, Washington, DC (N. David Palmeter, Susan M. Mathews, Ronald E. Minsk) for Plaintiff.

Frank W. Hunger, Assistant Attorney General of the United States, David M. Cohen, Director, Lucius B. Lau, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice (Linda A. Andros, Attorney–Advisor, Office of the Chief Counsel for Import Administration,

Department of Commerce, of counsel), for Defendant.

## OPINION

POGUE, Judge.

This case is before the Court on Plaintiff's motion for judgment on the agency record pursuant to USCIT R. 56.2. The Plaintiff, Eckstrom Industries, Inc. ("Eckstrom"), challenges the determination of the Department of Commerce ("Commerce") that cast stainless steel butt-weld pipe fittings imported by Eckstrom are within the scope of the antidumping duty order on stainless steel butt-weld pipe fittings from Taiwan. *See Amended Final Determination and Anti-dumping Duty Order: Certain Welded Stainless Steel Butt–Weld Pipe Fittings From Taiwan*, 58 Fed.Reg. 33,250 (Dep't Commerce, June 16, 1993)(Pub.Doc. 4) ("Amended Final Determination"). Commerce issued its determination on September 29, 1997. *See Final Affirmative Scope Ruling–Antidumping Duty Order on Stainless Steel Butt–Weld Pipe Fittings from Taiwan (A–583–816); Eckstrom Industries, Inc.*, (September 29, 1997)(Pub.Doc. 8)("Final Scope Ruling"). The Court has jurisdiction over this matter under 28 U.S.C. § 1581(c)(1994).

## Background

### A. The Documentary Record

On May 20, 1992, the Flowline Division of Markovitz Enterprises, Inc. ("Flowline") petitioned Commerce for the imposition of antidumping duties on "stainless steel butt-weld pipe fittings under 14 inches (inside diameter) imported from Taiwan and the Republic of Korea." *See* Petition for the Imposition of Antidumping Duties, (May 20, 1992)(Pub.Doc. 1) at 1 ("Petition"). In its petition, Flowline explained that,

> Stainless steel butt-weld pipe fittings are used to connect pipe sections in piping systems where conditions require welded connections, as distinguished from fittings designed for other fastening methods (e.g., threaded, grooved, or bolted fittings). Stainless steel butt-weld fittings are used where one or more of the following conditions is a factor in designing the piping

system: (1) corrosion of the piping system will occur if material other than stainless steel is used; (2) contamination of the material in the system by the system itself must be prevented; (3) high temperatures (in excess of 300°F) are present; (4) extreme low temperatures are present; (5) high pressures are contained within the system.

Petition at 3–4.

In defining the scope of its petition, Flowline first referenced subheading 7307.23 of the Harmonized Tariff Schedule ("HTSUS"). *Id.* at 1. Flowline next described the applicable specifications:

> More specifically, the fittings subject to this petition are designated under Specification ASTM A403/A403M–1991, the standard specification for Wrought Austenitic Stainless Steel Pipe Fittings.... All products in these specifications are within the scope of this petition, including 90° long radius elbows, 90° reducing elbows, 90° short radius elbows, 45° long radius elbows, 180° long radius returns, caps, straight tees, reducing outlet tees, stub ends, concentric reducers, eccentric reducers, straight crosses, and reducing outlet crosses....

*Id.* at 1–2. Referring to the tariff and product specifications, Flowline stated, "[the] scope of this petition includes both finished fittings under these classifications, as well as unfinished fittings capable of meeting these specifications. It excludes threaded, grooved, and bolted fittings." *Id.* at 2.

Finally, Flowline described the manufacturing process by which the pipe fittings subject to its petition are made: "stainless steel butt-weld pipe fittings are generally cold-formed from fusion-welded stainless steel pipe. However, production of some types of stainless steel fittings, notably 'stub ends[,]' requires heating the raw material and performing forging operations." *Id.* at 5.

In response to Flowline's petition, Commerce began an investigation. In its initiation notice, Commerce defined the scope of the investigations: "[t]he products subject to these investigations are stainless steel butt-

weld pipe fittings, whether finished or unfinished, under 14 inches inside diameter." *Initiation of Antidumping Duty Investigations: Certain Stainless Steel Butt–Weld Pipe Fittings from the Republic of Korea and Taiwan,* 57 Fed.Reg. 26,645 (Dep't Commerce, June 15, 1992)(Pub.Doc. 2)("Initiation Notice"). ·

Commerce further explained that,

The subject merchandise is used where one or more of the following conditions is a factor in designing the piping system: (1) Corrosion of the piping system will occur if material other than stainless steel is used; (2)contamination of the material in the system by the system itself must be prevented; (3)high temperatures are present; (4) extreme low temperatures are present; (5) high pressures are contained within the system.

*Id.* Moreover, Commerce indicated that, "[s]tainless steel butt-weld pipe fittings come in a variety of shapes, with the following five shapes the most basic: 'elbows', 'tees', 'reducers', 'stub ends', and 'caps'." *Id.* Finally, Commerce stated that, "[t]he stainless steel butt-weld pipe fittings subject to these investigations are classifiable under subheading 7307.23.00 of the [HTSUS.]" *Id.* In referencing the applicable tariff classification, however, Commerce disclaimed that, "[a]lthough the HTSUS subheading is provided for convenience and customs purposes, our written description of the scope of these investigations is dispositive." *Id.*

In its preliminary determination, Commerce defined the scope of investigation the same way it had in the Initiation Notice. *See Preliminary Determination of Sales at Less Than Fair Value: Certain Stainless Steel Butt–Weld Pipe Fittings From Taiwan,* 57 Fed.Reg. 61,047–48 (Dep't Commerce, December 23, 1992) ("Preliminary Determination"). In its final determination, however, Commerce defined the scope of investigation in the same manner as previously, except for the inclusion of the adjective "welded" in the second sentence of the scope definition: "[c]ertain *welded* stainless steel butt-weld pipe fittings[.]" *Final Determination of Sales at Less Than Fair Value: Certain Stainless Steel Butt–Weld Pipe Fittings*

*From Taiwan,* 58 Fed.Reg. 28,556 (Dep't Commerce, May 14, 1993)("Final Determination").

Concurrent with Commerce's investigation of whether the subject imports were being sold at less than fair value, the International Trade Commission (the "Commission") conducted its investigation of whether the subject imports were causing material injury ·or the threat of material injury to the domestic industry. In conducting its investigation, the Commission sent questionnaires to importers and domestic producers of stainless steel butt-weld pipe fittings. In each questionnaire, the Commission specified that the subject pipe fittings "are provided for in subheading 7307.23.00" of the HTSUS without an accompanying disclaimer. *See* Pl.'s Mem. Supp. Mot. J. Agency R. at Exhibit 5 ("Importers' Questionnaire") and Exhibit 7 ("U.S. Producers' Questionnaire").

In its final affirmàtive determination, the Commission found that "an industry in the United States is materially injured by reason of imports from Taiwan of certain stainless steel butt-weld pipe fittings, whether finished or unfinished, under 14 inches inside diameter, provided for in subheading 7307.23.00 of the Harmonized Tariff Schedule of the United States[.]" *Certain Stainless Steel Butt–Weld Pipe Fittings From Taiwan,* USITC Pub. 2641, Inv. No. 731–TA–564 (Final)(June 1993) at 1. In defining the scope of its investigation, the Commission incorporated by reference its like product discussion in *Certain Stainless Steel Butt–Weld Pipe Fittings from Korea,* USITC Pub. 2601, Inv. No. 731–TA–563 (Final)(Feb. 1993)(Pub.Doc. 3)("ITC Final Determination").

In its final determination, the Commission stated that, "[i]mports of the subject stainless steel butt-weld pipe fittings are classified in HTS subheading 7307.23.00[.]" *Id.* at I–9. No disclaimer was included. With regard to product specifications, the Commission stated, "[t]he fittings themselves are usually designated under the performance specifications of ASTM A403/A403M–1991 and the dimensional specifications of ANSI B16.9–1986 and ANSI B16.28–1986." *Id.* at I–7. In describing the manufacturing process, the Commission explained;

[t]he domestic manufacturing sector includes integrated producers and combination producers. Integrated producers begin with stainless pipe as their raw material and perform forming, machining, and finishing operations. Combination producers produce some fittings inan integrated process and other fittings in a conversion process (performing only machining and finishing operations).

Generally, stainless steel butt-weld pipefittings are cold formed from fusion-welded or seamless stainless steel pipe. However, production of some types of fittings, notably stub-ends, requires heating the raw material and performing forging operations.

*Id.* at I–6.

Having made an affirmative dumping finding in the underlying action, Commerce made its final determination of the scope of the antidumping duty order on June 16, 1993. *See* Amended Final Determination at 33,250. Commerce entitled the determination, "Certain *Welded* Stainless Steel Butt–Weld Pipe Fittings From Taiwan." *Id.* (emphasis added). Moreover, in the Scope of Order [1] section of the determination, the second sentence began, "[c]ertain *welded* stainless steel butt-weld pipe fittings . . . ." *Id.* (emphasis added).

**1.** The Scope of Order will be referred to throughout this Opinion. Scope of Order will only refer to the scope description within the Amended Final Determination.

The text of the Scope of Order states,

[t]he products subject to this investigation are certain stainless steel butt-weld pipe fittings, whether finished or unfinished, under 14 inches inside diameter.

Certain welded stainless steel butt-weld pipe fittings (pipe fittings) are used to connect pipe sections in piping systems where conditions require welded connections. The subject merchandise is used where one or more of the following conditions is a factor in designing the piping system: (1) Corrosion of the piping system will occur if material other than stainless steel is used; (2) contamination of the material in the system by the system itself must be prevented; (3) high temperatures are present; (4) extreme low temperatures are present; (5) high pressures are contained within the system.

Pipe fittings come in a variety of shapes, with the following five shapes the most basic: 'el-

The Scope of Order stated that "[t]he pipe fittings subject to these investigations are classifiable under subheading 7307.23.00 of the [HTSUS]." *Id.* at 33,250. Nevertheless, as with the Initiation Notice, Preliminary Determination, and Final Determination, Commerce provided the following disclaimer: "[A]lthough the HTSUS subheading is provided for convenience and customs purposes, our written description of the scope of these investigations is dispositive." *Id.*

### B. The Final Scope Ruling

Eckstrom imports *cast* stainless steel butt-weld pipe fittings. *See* Pl.'s Mem. Supp. Mot. J. Agency R. at 1. Pursuant to 19 C.F.R. § 351.225(d),[2] Eckstrom requested that Commerce issue an expedited scope ruling "that Eckstrom's imports of stainless steel castings are not within the scope of the referenced antidumping order." Pl.'s Request for AD Scope Ruling, (Aug. 14, 1997)(Pub.Doc. 6) at 1 ("Scope Request").

Eckstrom argued that its "imports of *cast* pipe fittings are not covered by [the] order dealing with *welded* fittings." *Id.* at 1–2. According to Eckstrom, its "castings bear no similarity to the merchandise covered by the order in design, content, or application, except for usage of the common name 'stubend.' " *Id.* at 2. Specifically, Eckstrom explained that its "castings are designed to be

bows', 'tees', 'reducers', 'stubends', and 'caps'. The edges of finished pipe fittings are beveled. Threaded, grooved, and bolted fittings are excluded from these investigations. The pipe fittings subject to these investigations are classifiable under subheading 7307.23.00 of the Harmonized Tariff Schedule of the United States (HTSUS).

Although the HTSUS subheading is provided for convenience and customs purposes, our written description of the scope of these investigations is dispositive.

Amended Final Determination at 33,250.

**2.** The regulation that governed Commerce's scope ruling in this case, 19 C.F.R. § 351.225, became effective May 19, 1997. *See Antidumping Duties; Countervailing Duties*, 62 Fed.Reg. 27,295, at 27,403–05 (final rule, May 19, 1997). The applicable provisions are still in force today.

§ 351.225(c) provides that, "[a]ny interested party may apply for a ruling as to whether a particular product is within the scope of an order[.]"

used for low pressure sanitary or corrosive applications in the food or pulp industries, and cannot be used in the following applications covered by the order—contamination, high temperature, extreme low temperature, and high pressure." *Id.* Eckstrom further explained that "[t]he 'stubend' covered under the order is made to specification ASTM A403 from *welded* pipe ... [whereas] [t]he Eckstrom 'cast stubend' is produced from *cast* rather than welded pipe, is not produced to conform to any particular standard, and does not conform to the dimensional requirements of ASTM A403." *Id.* Finally, Eckstrom argued that, because its imports are classified under HTSUS subheading 7307.19.90.80 covering "cast fittings of stainless steel," the antidumping duty order, which referenced subheading 7307.23.00 covering "butt welding fittings," excluded its imports. *Id.* at 3.

Pursuant to 19 C.F.R. § 351.225(d), Commerce issued a final ruling determining that the scope of the antidumping order includes Eckstrom's imports. *See* Final Scope Ruling. Commerce issued its ruling pursuant to § 351.225(d), which provides that if Commerce "can determine, based solely upon the application [for a scope request] and the descriptions of the merchandise referred to in paragraph (k)(1) of this section, whether a product is included within the scope of an order ..., [Commerce] will issue a final ruling[.]" Paragraph (k)(1) states that Commerce must take into account "[t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of [Commerce] (including prior scope determinations) and the Commission." If the criteria in paragraph (k)(1) are "dispositive," Commerce may issue an expedited final ruling without conducting a formal scope inquiry. *See* 19 C.F.R. § 351.225(d).

Evaluating Eckstrom's scope request, Commerce determined that the descriptions of the product in the petition, the final determinations of Commerce and the Commission, and the antidumping duty order are dispositive, clearly and unambiguously including Eckstrom's imports within their scope. *See* Final Scope Ruling at 2. In sum, Commerce concluded that,

The petition, the investigations of the Department and the Commission, and the final antidumping duty order covered stainless steel butt-weld pipe fittings under fourteen inches in inside diameter which are intended for, *inter alia,* use in food processing lines where corrosion or contamination must be controlled. Based on the evidence in the record of this scope inquiry, we conclude that, as to Eckstrom's fittings which are under fourteen inches in inside diameter, these products are made from stainless steel. Eckstrom's fittings are of the type intended for use in food processing lines requiring sanitary and corrosion-resistant fittings. Finally, these stub-ends will be connected to pipe sections by means of a butt-weld, as demonstrated by the beveling on the end of the fitting opposite the flange. From the record evidence, we must conclude that Eckstrom's stub-ends are stainless steel butt-weld pipe fittings specifically within the scope of the antidumping duty order.

Final Ruling at 6.

On May 18, 1998, Eckstrom filed its Motion for Judgment on the Agency Record, seeking a reversal of Commerce's Final Ruling that Eckstrom's imports are within the scope of the antidumping duty order on stainless steel butt-weld pipe fittings from Taiwan.

### Standard of Review

The Court reviews Commerce's scope determination to decide whether it is in accordance with law and supported by substantial evidence. *See* 19 U.S.C. § 1516a(b)(1)(B)(i)(1994).

### Discussion

 Commerce "enjoys substantial freedom to interpret and clarify its antidumping orders. But while it may interpret those orders, it may not change them." *Ericsson GE Mobile Communications, Inc. v. United States,* 60 F.3d 778, 782 (Fed.Cir.1995); *see also, Wirth Limited v. United States,* 22 CIT ——, 5 F.Supp.2d 968, 976 (1998), *appeal docketed,* No. 98–1391 (Fed.Cir. May 27, 1998); *Mitsubishi Elec. Corp. v. United States,* 16 CIT 730, 733–34, 802 F.Supp. 455, 458 (1992). Rather, "[e]ach stage of the stat-

utory proceeding maintains the scope passed on from the previous stage." *UST, Inc. v. United States,* 9 CIT 352, 356 (1985). An expansion of the scope of the order is impermissible and not in accordance with law. *See Mitsubishi,* 16 CIT at 736, 802 F.Supp. at 460. Moreover, Commerce's "discretion must be exercised reasonably and any consequent determination must be supported by substantial evidence in the administrative record." *SKF USA, Inc. v. United States,* 15 CIT 152, 156, 762 F.Supp. 344, 348 (1991), *aff'd,* 972 F.2d 1355 (Fed.Cir.1992); *Mitsubishi,* 16 CIT at 737, 802 F.Supp. at 461.

■ Commerce must make its scope determination in accordance with 19 C.F.R. § 351.225(k). *See New England Tank Industries of New Hampshire, Inc. v. United States,* 861 F.2d 685, 694 (Fed.Cir.1988)("It is mandatory regulations that 'have the force and effect of law.' ")(citing *Accardi v. Shaughnessy,* 347 U.S. 260, 265, 74 S.Ct. 499, 98 L.Ed. 681 (1954)). *But see American Farm Lines v. Black Ball Freight Service,* 397 U.S. 532, 539, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970)(holding that an agency is not bound by regulations that "are mere aids to the exercise of the agency's independent discretion"). Thus, Commerce is required to consider "[t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission." 19 C.F.R. § 351.225(k)(1); *see also Wirth,* 22 CIT at ——, 5 F.Supp.2d at 976; *Wheatland Tube Co. v. United States,* 21 CIT ——, 973 F.Supp. 149, 155 (1997), *appeal docketed,* No. 98–1102 (Fed.Cir. Sept. 15, 1997); *Ericsson GE Mobile Communications, Inc. v. United States,* 21 CIT ——, 955 F.Supp. 1510, 1520–21 (1997).

■ When the above descriptions "are not dispositive, [Commerce] will further consider: (i)[t]he physical characteristics of the product; (ii)[t]he expectations of the ultimate purchasers; (iii)[t]he ultimate use of the product; (iv)[t]he channels of trade in which the product is sold; and (v)[t]he manner in which the product is advertised and displayed." 19 C.F.R. § 351.225(k)(2); *see also Wirth,* 22 CIT at ——, 5 F.Supp.2d at 979; *Wheatland,* 21 CIT at ——, 973 F.Supp. at 155; *Erics-*

*son,* 21 CIT at ——, 955 F.Supp. at 1521. This court has held that where the descriptions in paragraph (k)(1) are ambiguous, they are not dispositive; Commerce must then resort to the second prong at paragraph (k)(2). *See Koyo Seiko Co., Ltd. v. United States,* 155 F.3d 574, 1998 WL 454402 at 9 (Fed.Cir.1998); *Wirth,* 22 CIT at ——, ——, 5 F.Supp.2d at 978, 979.

Eckstrom argues that Commerce failed to "adequately consider" the petition, the record of the Commission's initial investigation, the determinations of the Commission and of Commerce, and the Scope of Order in violation of its own regulations. *See* Pl.'s Mem. Supp. Mot. J. Agency R. at 11. "Had [Commerce] done so," Eckstrom states, "it could not have reasonably determined that cast stainless steel butt-weld pipe fittings were within the scope of the order." *Id.* Eckstrom concludes that Commerce's determination in its Final Scope Ruling was, therefore, an impermissible expansion of the scope of the order and not in accordance with law. *Id.* at 8, 11.

■ This Court disagrees. Commerce maintains substantial discretion to interpret and clarify its antidumping orders. *See Ericsson,* 60 F.3d at 782. Commerce must do so, however, in accordance with its regulations. § 351.225(k)(1) requires the threshold determination of whether the descriptions of the product covered in the petition, the initial investigation, and the final determinations are dispositive. Therefore, the sole question before the Court is whether Commerce's § 351.225(k)(1) determination is supported by substantial evidence.

## A. The Petition

19 C.F.R. § 351.225(k)(1) requires Commerce to first consider the petition. "In ... a scope investigation, where Commerce examines the description of the merchandise contained in the petition, Commerce must give ample deference to the intent of the petitioner." *Koyo Seiko Co., Ltd. v. United States,* 22 CIT ——, ——, 955 F.Supp. 1532, 1537 (1997).

Here, the petition states that its scope covers "stainless steel butt-weld pipe fittings

under 14 inches (inside diameter) imported from Taiwan and the Republic of Korea." Petition at 1. The Defendant argues that this language expressly includes Eckstrom's cast pipe fittings. *See* Def.'s Mem. Opp'n to Mot. J. Agency R. at 18. Moreover, Commerce points out that Eckstrom's fittings are used for corrosive applications, a use that was specifically provided for in the petition. *See* Final Scope Ruling at 5.

Eckstrom points out, however, that the petition references the products subject to its scope by: 1) a tariff classification that specifically excludes cast pipe fittings, *see* Pl.'s Mem. Supp. Mot. J. Agency R. at 11–12; 2) specifications that explicitly exclude cast pipe fittings, *see id.* at 12; and 3) a completely different manufacturing process than that used to produce cast pipe fittings, *see id.* at 13–14.

### 1. Tariff Classification

The petition states that "[t]he pipe fittings subject to this petition are classifiable ... under 7307.23 of the Harmonized Tariff Schedule." Petition at 1. Subheading 7307.23.00 covers "butt welding fittings." [3] *See* HTSUS (1997). Eckstrom points out, however, that its cast pipe fittings are not classified under subheading 7307.23.00, but under subheading 7307.19.90.80, which covers cast fittings of stainless steel. *See* Pl.'s Mem. Supp. Mot. J. Agency R. at 12 (citing HTSUS (1997)). Therefore, Eckstrom argues, the petitioner intended to specifically exclude cast pipe fittings from the scope of the petition. *See id.*

In *Wheatland Tube Co. v. United States,* this court recognized that a petitioner may reference a tariff classification to define its scope. *See* 21 CIT at ——, 973 F.Supp. at 157. In distinguishing *Wheatland,* however, this court later held that "[t]he inclusion of various HTSUS headings in a petition ordinarily should not be interpreted to exclude merchandise determined to be within the scope of the antidumping ... duty order[ ] but classified under an HTSUS heading not listed in the petition." *Wirth,* 22 CIT at

——, 5 F.Supp.2d at 977–78. The *Wirth* court found *Wheatland* inapplicable because in *Wheatland* the petitioner had relied solely on the HTSUS classification in defining the scope of its petition. *See id.* at ——, 5 F.Supp.2d at 977. Although the HTSUS subheading in the petition in *Wirth* excluded the plaintiff's imports, the court still found substantial evidence to support Commerce's determination that the petition's scope was ambiguous. *See id.* at , 5 F.Supp.2d at 978. The issue then turns on the use of a tariff classification in the petition.

Here, the Defendant argues that Flowline did not express the intent to limit its petition solely to merchandise entered under HTSUS subheading 7307.23.00. *See* Def.'s Mem. Opp'n to Mot. J. Agency R. at 20. Moreover, the Defendant argues that even if Flowline had "intended to base the scope of the orders upon tariff classification categories, it was well within Commerce's authority to state that the written descriptions of the scope are dispositive, not the tariff classification numbers." *Id.* As support for this proposition, the Defendant quotes *Mitsubishi Elec. Corp. v. United States,* 8 Fed. Cir. (T) 45, 50, 898 F.2d 1577, 1582 (1990): "The responsibility to determine the proper scope of the investigation and of the antidumping order ... is that of the Administration, not of the complainant before the agency." "Complainant" in that sentence, however, refers to the importer that challenged Commerce's scope determination, not to the original petitioner. *See id.* Contrary to Commerce's assertion, when "Commerce examines the description of the merchandise contained in the petition, Commerce must give ample deference to the petitioner." *Koyo Seiko,* 21 CIT at ——, 955 F.Supp. at 1537.

Here, the petitioner clearly stated that the pipe fittings subject to its petition are classifiable under HTSUS subheading 7307.23.00. *See* Petition at 1. Because the tariff schedules are written in the language of commerce, the petitioner was presumptively aware that HTSUS subheading 7307.23.00 excluded cast fittings. *Cf. Permagrain*

---

**3.** HTSUS heading 7307 covers "[t]ube or pipe fittings (for example, couplings, elbows, sleeves), of iron or steel[.]" HTSUS (1997).

*Products, Inc. v. United States,* 9 CIT 426, 429, 623 F.Supp. 1246, 1248 (1985)("It is well established that tariff terms are to be construed in accordance with their common and commercial meanings."). Moreover, unlike the situation in *Wirth,* Eckstrom's imports were not subsequently reclassified to be within the HTSUS subheading referenced by the petitioner. *See Wirth,* 22 CIT at ——, 5 F.Supp.2d at 972. We recognize Commerce's authority to determine the proper scope of the order. Nonetheless, here, the petitioner's tariff classification reference is not consistent with Commerce's conclusion that the petition unambiguously covers Eckstrom's cast pipe fittings.

### 2. Product Specification

The petition states that "the fittings subject to this petition are designated under Specification ASTM A403/A403M–1991, the standard specification for Wrought Austenitic Stainless Steel Pipe Fittings...." Petition at 1. "The term 'wrought' distinguishes forged iron or steel pipe from cast-iron pipe." THE MAKING, SHAPING AND TREATING OF STEEL 1019 (William T. Lankford, Jr. et al. eds., 10th ed.1985). Moreover, the specification explicitly excludes cast fittings. *See* Scope Request at Exhibit 1A (Standard Specification for Wrought Austenitic Stainless Steel Pipe Fittings).

The Defendant argues that there is no indication that the petitioner intended to limit the scope to merchandise manufactured according to specified industry standards. *See* Def.'s Mem. Opp'n to Mot. J. Agency R. at 21. Eckstrom points out, however, that all of the product standards listed in the petition are explicitly applicable solely to pipe fittings made from welded pipe. *See* Pl.'s Reply Mem. Supp. Mot. J. Agency R. at 6–7. Moreover, referring to the tariff and product specifications, the petition states, "[the] scope of this petition includes both finished fittings under these classifications, as well as unfinished fittings capable of meetings these specifications. It excludes threaded, grooved, and bolted fittings." Petition at 2. Therefore, even though cast fittings are not listed as an exclusion, because cast fittings do not fall within the listed specifications, the peti-

tion appears to exclude them. Thus, at a minimum, the petitioner's product specification reference is not consistent with Commerce's conclusion that the petition unambiguously covers Eckstrom's cast pipe fittings.

### 3. Manufacturing Process

The petition states that "stainless steel butt-weld pipe fittings are generally cold-formed from fusion-welded stainless steel pipe. However, production of some types of stainless steel fittings, notably 'stub ends', requires heating the raw material and performing forging operations." Petition at 5. As Eckstrom points out, however, cast pipe fittings are neither cold-formed nor made from steel pipe; rather, cast pipe fittings are made by pouring molten metal into a mold of the desired shape. *See* Pl.'s Reply Mem. Supp. Mot. J. Agency R. at 3–4 (citing THE MAKING, SHAPING AND TREATING OF STEEL 1205 (William T. Lankford, Jr. et al. eds., 10th ed.1985)).

The Defendant rebuts that the petition indicates that the subject pipe fittings are "generally" cold-formed from fusion-welded pipe, allowing room for alternative manufacturing processes. *See* Def.'s Mem. Opp'n to Mot. J. Agency R. at 21. As Eckstrom demonstrates, however, the Defendant's argument ignores the exception already provided by the petitioner in the following sentence: "However, production of some types of stainless steel fittings, notably 'stub ends', requires heating the raw material and performing forging operations." *See* Pl.'s Reply Mem. Supp. Mot. J. Agency R. at 8 (citing Petition at 5). Because both the general and exceptional manufacturing processes listed by the petitioner involve a forging process in which welded pipe is the raw material, the petition appears to exclude Eckstrom's cast pipe fittings from its scope.

Thus, the petitioner's description of the manufacturing process by which the intended subject imports are produced is not consistent with Commerce's conclusion that the petition unambiguously covers Eckstrom's cast pipe fittings.

4. **Conclusion**

Although the petition's opening scope reference—"stainless steel butt-weld pipe fittings"—and description of applications are broad enough to include Eckstrom's imports, the petitioner's use of the tariff classification, product specifications, and description of the manufacturing process are not consistent with that conclusion. Based on these findings, Commerce's determination that the petition unambiguously includes cast stub ends in its scope is not supported by substantial evidence.

**B. The Initial Investigation**

In making its scope determination pursuant to 19 C.F.R. § 351.225(k)(1), Commerce must also examine the initial investigations of the Commission and Commerce.

1. **The Commission's Investigation**

[redacted] "[A]n antidumping duty order must be supported by an ITC determination of material injury covering the merchandise in question." *Wheatland*, 21 CIT at ——, 973 F.Supp. at 158 (citing 19 U.S.C. § 1673 (1994)). In its Final Scope Ruling, Commerce determined that the Commission had defined the like product as "stainless steel butt-weld pipe fittings, whether finished or unfinished, under fourteen inches in inside diameter." *See* Def.'s Mem. Opp'n to Mot. J. Agency R. at 27. Eckstrom argues, however, that the Commission never investigated whether cast pipe fittings were causing injury to the domestic industry in direct opposition to 19 U.S.C. § 1673 (1994). *See* Pl.'s Mem. Supp. Mot. J. Agency R. at 16. The Defendant rebuts that "[t]here is no indication that the Commission was soliciting information solely regarding fittings which were manufactured from welded pipe (as opposed to fittings which are cast)." Def.'s Mem. Opp'n to Mot. J. Agency R. at 26.

In support of its position that the Commission never investigated cast pipe fittings, Eckstrom refers to questionnaires the Commission distributed to United States importers and producers. *See* Pl.'s Mem. Supp. Mot. J. Agency R. at 16. Both questionnaires state that the stainless steel butt-weld pipe fittings it investigates are provided for in subheading 7307.23.00 of the HTSUS. *See* Pl.'s Mem. Supp. Mot. J. Agency R. at Exhibits 5 and 6. Because subheading 7307.23.00 does not provide for cast pipe fittings, it appears the Commission did not investigate their effects on the domestic industry.

The Defendant, however, argues that the Commission's questionnaires are non-record evidence pursuant to 19 U.S.C. § 1516a(b)(2)[4] and, therefore, are not properly cited by the Plaintiff. *See* Def.'s Mem. Opp'n to Mot. J. Agency R. at 23–25. The Court does not need to determine the status of the questionnaires, however, because the Commission also included the welded (not cast) tariff classification in describing the scope of its injury investigation in its final determination. *See* ITC Final Determination at I–9. In response to the Commission's reference to HTSUS subheading 7307.23.00, the Defendant argues that, because "Commerce is not bound by tariff classifications in reaching a scope determination[,] . . . the fact that the Commission referenced a tariff classification is immaterial." Def.'s Mem. Opp'n to Mot. J. Agency R. at 26–27. Defendant's argument, however, is totally unresponsive to Eckstrom's contention that the Commission never investigated cast pipe fittings. Therefore, substantial evidence does not support Commerce's conclusion that the Commission's injury investigation unambiguously includes cast pipe fittings.

2. **Commerce's Investigation**

Commerce's Initiation Notice and Preliminary Determination arguably cover Eckstrom's cast pipe fittings. Each define the scope of the investigation in the following manner: "[t]he products subject to these investigations are certain stainless steel butt-weld pipe-fittings, whether finished or unfinished, under 14 inches inside diameter." Moreover, each lists the prevention of corro-

4. The statute defines the record for review as "a copy of all information presented to or obtained by the Secretary, the administering authority, or the Commission during the course of the administrative proceeding[.]" 19 U.S.C. § 1516a(b)(2).

sion of the piping system as an application of the subject pipe fittings. *See* Initiation Notice at 26,645; Preliminary Notice at 61,048. Finally, these documents list the five most basic shapes of stainless steel butt-weld pipe fittings: elbows, tees, reducers, stub ends, and caps. *See id.* Eckstrom's cast pipe fittings are both stainless steel pipe stub ends used for corrosive applications in the food or pulp industries. Therefore, Commerce's initial investigation arguably included them.

Each of these documents, however, also states that the pipe fittings "subject to these investigations are classifiable under subheading 7307.23.00 of the [HTSUS]." *Id.* Again, subheading 7307.23.00 covers welded—not cast—pipe fittings. Although Commerce in each case provided a disclaimer indicating that the HTSUS subheading was referenced for convenience and was not dispositive, *see id.*, its inclusion may add ambiguity as to whether cast pipe fittings were included in the investigation, especially given that none of these documents specifically reference pipe fittings that are cast.

Moreover, the Final Determination differs from the Initiation Notice and from the Preliminary Determination in one key respect: the second sentence of its scope states "[c]ertain *welded* stainless steel butt-weld pipe fittings[.]" Final Determination at 28,556 (emphasis added). The use of the adjective "welded" to modify "stainless steel" makes the conclusion (that cast stainless steel butt-weld pipe fittings are within the scope) suspect. In addition, immediately following this scope statement, Commerce placed "pipe fittings" within a parenthetical. *Id.* Thereafter, Commerce referred simply to "pipe fittings" when defining the scope. *Id.* Because "pipe fittings" as defined by Commerce refers only to *welded* stainless steel pipe fittings, all of Commerce's subsequent descriptions of pipe fittings can refer only to welded pipe fittings, including the following sentence: "[t]he pipe fittings subject to these investigations are classifiable under subheading 7307.23.00 of the [HTSUS]." *Id.* The addition of the term

"welded" in the second sentence and the repeated use of the reference to welded pipe fittings render the first sentence of the scope definition in the Final Determination, which omits the adjective "welded," ambiguous.[5]

### 3. Conclusion

Accordingly, Commerce's determination that the scope of the initial investigations unambiguously includes cast pipe fittings is not supported by substantial evidence.

### C. The Final Determinations

#### 1. The Commission

In its final determination, the Commission states that it determined "that an industry in the United States is materially injured by reason of imports from Taiwan of certain stainless steel butt-weld pipe fittings, whether finished or unfinished, under 14 inches inside diameter, provided for in subheading 7307.23.00 of the [HTSUS.]" *Certain Stainless Steel Butt–Weld Pipe Fittings From Taiwan*, USITC Pub. 2641, Inv. No. 731–TA–564 (Final)(June 1993) at 1. Again, the Commission references the subject imports by HTSUS subheading 7307.23.00. *See* ITC Final Determination at I–9. Moreover, the Commission states that the subject pipe fittings "are usually designated under the performance specifications of ASTM A403/A403M–1991[.]" *Id.* at I–7. Finally, in describing the manufacturing process, the Commission notes that the subject pipe fittings are either cold-formed or hot-formed from stainless or welded pipe. *See id.* at I–6.

Again, the Defendant argues that the tariff classification reference is immaterial because Commerce is not bound by tariff classifications. *See* Def.'s Mem. Opp'n to Mot. J. Agency R. at 26–27. The appropriate question, however, is not whether Commerce is bound by the Commission's use of an HTSUS subheading, but whether the Commission included cast pipe fittings in its final determination. That the Commission referenced the scope of its investigation by a

---

5. Again, like the Initiation Notice and Preliminary Determination, the first sentence of the Final Determination states, "[t]he products subject to this investigation are certain stainless steel butt-weld pipe fittings, whether finished or unfinished, under 14 inches inside diameter." Final Determination at 28,556.

tariff classification that excludes cast fittings tends to support the conclusion that it did not. Moreover, although the Commission's final determination merely states that the subject fittings are only "usually" designated under specification ASTM A403/A403–1991, Eckstrom points out that the Commission does not reference a single specification that is applicable to cast fittings. *See* Pl.'s Reply Mem. Supp. Mot. J. Agency R. at 10–11. Finally, the final determination itself never specifically refers to cast pipe fittings.

Accordingly, this Court cannot conclude that the Commission's final determination unambiguously includes Eckstrom's cast pipe fittings.

### 2. Commerce

The first sentence of the Scope of Order states, "[t]he products subject to this investigation are certain stainless steel butt-weld pipe fittings, whether finished or unfinished, under 14 inches inside diameter." Amended Final Determination at 33,250. In addition, the second paragraph of the Scope of Order states that "[t]he subject merchandise is used where ... [c]orrosion of the piping system will occur if material other than stainless steel is used[.]" *Id.* Arguably, Eckstrom's cast pipe fittings could fall within this scope definition.

Commerce, however, entitled the Amended Final Determination containing the Scope of Order, "Certain *Welded* Stainless Steel Butt-Weld Pipe Fittings From Taiwan." *Id.* (emphasis added). Again, use of the adjective "welded" to modify "stainless steel" precludes the possibility that cast pipe fittings are referenced.

Moreover, the second sentence of the Scope of Order also describes the subject imports as "[c]ertain *welded* stainless steel butt-weld pipe fittings (pipe fittings)[.]" *Id.* (emphasis added). As with the Final Determination, the use of the parenthetical, pipe fittings, throughout the remainder of the Scope of Order's text to designate the subject imports means that every subsequent modification of "pipe fittings" cannot refer to pipe fittings that are cast. The Defendant argues that, Eckstrom's reliance on the use of the adjective "welded" in the Amend-

ed Final Determination's title and the second sentence of the Scope of Order is based only on "isolated words and phrases." *See* Def.'s Mem. Opp'n to Mot. J. Agency R. at 30. To the contrary, in making its argument, Eckstrom has noted the tariff classification, product specification, and applicable manufacturing process referenced by the petitioner, the Commission, and Commerce throughout the investigation. Rather, it is the Defendant who relies on the isolated sentence, "[t]he products subject to this investigation are certain stainless steel butt-weld pipe fittings[,]" without pointing to a single specific reference to cast pipe fittings.

The Scope of Order also states, "[t]he pipe fittings subject to these investigations are classifiable under subheading 7307.23.00 of the [HTSUS]." Amended Final Determination at 33,250. Again, Eckstrom points out that subheading 7307.23.00 does not apply to pipe fittings that are cast as opposed to welded. *See* Pl.'s Mem. Supp. Mot. J. Agency R. at 20–21.

In rebuttal, the Defendant relies on *Smith Corona Corp. v. United States,* 8 Fed. Cir. (T) 180, 915 F.2d 683 (Fed.Cir.1990). In *Smith Corona,* the appellants sought a determination that their imports were not within the scope of an antidumping order. *Id.* at 182, 915 F.2d at 685. In that case, however, while the tariff classification remained the same throughout the investigation and the period following the final determination, the appellants' imports had been modified following the final scope order. *See id.* at 183, 915 F.2d at 686. The modified product was found to be within the tariff classification referenced in Commerce's final antidumping duty order. *See id.* Therefore, the imports were found to be within the scope of the order. *See id.* Here, the referenced tariff classification has never applied to cast pipe fittings, and Eckstrom's imports have never been modified in such a way as to be found within the classification's scope.

The Court notes the holding of *Wirth Limited v. United States:* "[t]he inclusion of various HTSUS headings in a petition ordinarily should not be interpreted to exclude merchandise determined to be within the scope

of the antidumping ... duty order[ ] but classified under an HTSUS heading not listed in the petition." 22 CIT at ——, 5 F.Supp.2d at 977–78. In *Wirth,* as here, an importer challenged Commerce's finding that its imports were within the antidumping duty order's scope, and Commerce disclaimed that its written description of the order's scope, rather than its references to tariff classifications, was dispositive.[6] *See id.* at ——, 5 F.Supp.2d at 970–71.

Eckstrom, however, does not argue that Commerce is *bound* by the tariff classification in the Scope of Order. *See* Pl.'s Reply Mem. Supp. Mot. J. Agency R. at 10, 12. Rather, Eckstrom argues that the referenced tariff classification provides further evidence that cast pipe fittings were not within the order's scope. *See id.* at 12; *see also Smith Corona,* 8 Fed. Cir. (T) at 184, 915 F.2d at 687 (holding that although a reference to a tariff classification in a final order is not dispositive, "it is a factor to be considered, along with all factors pertinent to the issue of the intended scope of the order[ ]"); *Wheatland,* 21 CIT at ——, 973 F.Supp. at 157 ("While Commerce is not required to conform its scope determinations to classification categories ..., use of tariff classifications to define scope is not prohibited and may serve Commerce's purposes, including administrative convenience.").

The first sentence of the Scope of Order is general enough to include cast pipe fittings. Moreover, cast pipe fittings are used where corrosion of the piping system will occur if material other than stainless steel is used. The use of the adjective "welded" in the title of the Amended Final Determination and in the second sentence of the Scope of Order, however, appears to exclude cast pipe fittings. Furthermore, the Scope of Order defines "pipe fittings" as "certain welded stainless steel butt-weld pipe fittings," and references a tariff classification

that specifically excludes cast pipe fittings. Therefore, the Court finds that the final antidumping duty order's scope is ambiguous.

### 3. Conclusion

Based on these findings, Commerce's determination in its Final Scope Ruling that the final determinations unambiguously include cast pipe fittings is not supported by substantial evidence.

### Conclusion

Commerce's scope determination was conducted in accordance with law. Commerce followed the applicable regulation, 19 C.F.R. § 351.225(k)(1), in evaluating whether the descriptions of the merchandise in the petition, initial investigation, and final determinations are dispositive in including Eckstrom's imports within their scope. Moreover, Commerce has authority to interpret and clarify its antidumping duty order, though not to impermissibly expand its scope.

Commerce's determination that the § 351.225(k)(1) criteria are dispositive, however, is not supported by substantial evidence. The descriptions of the merchandise contained in the petition, the initial investigation, and the final determinations do not unambiguously include cast pipe fittings within their scope. Similarly, however, the Plaintiff has not adequately demonstrated that the § 351.225(k)(1) criteria are dispositive in *excluding* cast pipe fittings.[7] Therefore, the Court remands the matter to Commerce to reconsider its determination and, if necessary, to conduct a formal scope inquiry employing the criteria listed at § 351.225(k)(2).

In accordance with the foregoing, if Commerce conducts a formal scope inquiry, its determination shall be completed pursuant to 19 C.F.R. § 351.225(f). Otherwise, Commerce shall complete its remand determination by **Monday, December 28, 1998;** any

---

**6.** Unlike the current matter, however, the importer's product in *Wirth* was reclassified after the final determination to be within the tariff classifications referenced in the order. *See Wirth,* 22 CIT at ——, 5 F.Supp.2d at 972.

**7.** Despite the considerable evidence put forth by the Plaintiff, the Court cannot, at this stage, determine that the § 351.225(k)(1) criteria un-

ambiguously exclude Eckstrom's imports because two of the key identifiers listed in each of the documents are seemingly broad enough to include cast pipe fittings. That is, cast pipe fittings are both: 1) stainless steel butt-weld pipe fittings under fourteen inches inside diameter and 2) used in corrosive applications.

comments or responses are due by **Wednesday, January 27, 1999;** and any rebuttal comments are due by Thursday, **February 11, 1999.**

So Ordered.