SLIP NO. 99-61

# UNITED STATES COURT OF INTERNATIONAL TRADE

```
-------------------------------------------------------------
RUSS BERRIE & COMPANY, INC.,              :
              Plaintiff,                  :
                                          :
              v.                          :
                                          :
UNITED STATES OF AMERICA                  :      Before: Wallach, J.
              Defendant,                  :      Court No. 96-12-02777
                                          :
              and                         :
                                          :
NATIONAL CANDLE ASSOCIATION,              :
              Defendant-Intervenor.       :
-------------------------------------------------------------
```

[Plaintiff's Motion for Judgment on the Administrative Record is denied.]

Decided: July 13, 1999

Serko & Simon, LLP (Joel K. Simon, Arlen T. Epstein, and Christopher M. Kane), for Plaintiff.

David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, (Reginald T. Blades, Jr.); Melanie A. Frank, Of Counsel, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for Defendant.

Barnes & Thornburg (Randolph J. Stayin), for Defendant-Intervenor.

OPINION

I

INTRODUCTION

Plaintiff Russ Berrie & Company, Inc. ("Russ Berrie") contests the U.S. Department of Commerce's ("Commerce") Final Scope Ruling that wax-filled terracotta heart-shaped candles fall within the scope of the Antidumping Duty Order: Petroleum Wax Candles From the People's Republic of China, 51 Fed. Reg. 30,686 (1986) ("Antidumping Duty Order" or "Order"). Russ Berrie contends that (1) the Final Scope Ruling was not supported by substantial evidence in the

record and was not in accordance with law and (2) an inquiry into the factors set forth in 19

C.F.R. § 353.29(i)(2) (1997) was warranted.  Russ Berrie has moved for Judgment on the

Agency Record pursuant to USCIT R. 56.2.  For the reasons which follow, Russ Berrie's Motion

is denied, and the Final Scope Ruling is affirmed**.**

II

RELEVANT FACTS

On September 4, 1985, the National Candle Association ("NCA") filed an antidumping

petition alleging unfair imports of petroleum wax candles from the People's Republic of China

("PRC") with the U.S. Department of Commerce ("Commerce") and the International Trade

Commission ("ITC").  <u>See</u> Letter from Randolph J. Stayin, Taft, Stettinius & Hollister, to

Secretary of Commerce of 9/3/85, Administrative Record Document ("AR doc.") 1.  In July

1986, Commerce found that candles from the PRC were being sold in the United States at less

than fair market value.  <u>Petroleum Wax Candles from the People's Republic of China: Final</u>

<u>Determination of Sales at Less Than Fair Value</u>, 51 Fed. Reg. 25,085 (1986) ("Final

Determination of Sales at Less Than Fair Value").  On August 28, 1986, Commerce issued its

Antidumping Duty Order covering the following merchandise:

> certain scented or unscented petroleum wax candles made from petroleum wax
> and having fiber or paper-cored wicks. . . . sold in the following shapes: tapers,
> spirals, and straight-sided dinner candles; rounds, columns, pillars, votives; and
> various wax-filled containers.

Antidumping Duty Order, 51 Fed. Reg. 30,686**.**

On September 21, 1987, a U. S. Customs Service Information Exchange was issued

indicating that certain novelty candles would not be considered within the scope of the Order:

> The Department of Commerce has determined that certain novelty candles, such
> as Christmas novelty candles, are not within the scope of the antidumping duty

order on petroleum-wax candles from the People's Republic of China (PRC). Christmas novelty candles are candles specially designed for use only in connection with the Christmas holiday season. This use is clearly indicated by Christmas scenes or symbols depicted in the candle design. Other novelty candles not within the scope of the order include candles having scenes or symbols of other occasions (e.g., religious holidays or special events) depicted in their designs, figurine candles, and candles shaped in the form of identifiable objects (e.g., animals or numerals).

Customs Information Exchange, CIE N-212/85, 09/21/87, AR doc. 7 ("Customs Information Exchange of 1987") (emphasis added).

On April 4, 1996, Russ Berrie requested a scope review to determine whether mauve wax-filled terracotta hearts imported from the PRC were subject to the Order. Letter from Arlen T. Epstein, Serko & Simon, to Holly A. Kuga, Int'l Trade Admin., U.S. Dep't of Commerce, of 4/4/96, AR doc. 2, at 1 ("Plaintiff's Scope Request"). In its request, Russ Berrie described the candle as "a heart shaped terracotta holder filled with wax to form a heart shaped candle within the holder. The top of the candle is decorated with dried flowers." Id. Russ Berrie explained that the candle "is specifically marketed and sold by Russ Berrie as a Valentine's Day gift." Id. at 2. Russ Berrie argued that

> [u]nder all criteria under which determinations . . . of antidumping duties for petroleum wax candles from China are made, including the shape of the candle as a clearly identifiable object (i.e., a heart), the presence of the dried floral designs on the top of this item and the fact that this item is specifically marketed and sold in connection with an identifiable holiday, Valentine's Day, . . . this item clearly is outside the scope of [the] antidumping duty order.

Id. at 5. Russ Berrie accompanied its request with a sample of the candle and a photocopied page from what it described as Russ Berrie's 1996 Valentine's Day catalogue.

On July 24, 1996, NCA submitted comments opposing Russ Berrie's request. Letter from Randolph J. Stayin, Barnes & Thornburg, to Holly A. Kuga and Robert James, Int'l Trade Admin., U.S. Dep't of Commerce, of 7/24/96, AR doc. 3. Russ Berrie then submitted rebuttal

comments.  Letter from Arlen T. Epstein, Serko & Simon, to Holly A. Kuga and Robert James, Int'l Trade Admin., U.S. Dep't of Commerce, of 10/1/96, AR doc. 5 ("Letter of 10/1/96").

On October 28, 1996, Commerce issued its Final Scope Ruling.  Memorandum from Holly A. Kuga, Senior Director, AD/CVD Enforcement, Group 2, to Jeffrey P. Bialos, Principal Deputy Assistant Secretary for Import Administration, of 10/28/96, AR doc. 6 ("Final Scope Ruling").  In conducting the scope investigation, Commerce relied upon "the descriptions of the subject merchandise contained in the petition, the final determinations of the Secretary and the ITC, the antidumping duty order and subsequent scope rulings" in accordance with 19 C.F.R. § 353.29(i)(l).  Id. at 2.

Commerce concluded that the candle fit within the "'various wax-filled containers'" language of the Order.  Id. at 4.  It considered whether the candle fell within the novelty candle exception as a holiday or an identifiable object candle but concluded that it did not.  Id. at 4, 6-8.

Commerce noted that since it had conducted the scope review in accordance with 19 C.F.R. § 353.29(i)(l) and not under the criteria set forth in Diversified Products Corp. v. United States, 6 CIT 155, 572 F. Supp. 883 (1983),[1] Russ Berrie's arguments as to how its product was produced, advertised, sold and in which type of catalogue it appeared were irrelevant.  Id. at 7.

In response to the Final Scope Ruling, Russ Berrie filed a Motion for Judgment on the Agency Record challenging Commerce's determination on August 10, 1998.

The Court has jurisdiction over this matter under 28 U.S.C. § 1581(c) (1994).

---

[1]    In Diversified Products, 6 CIT at 162, 572 F. Supp. at 889, the Court established several factors for consideration in complex scope inquires that are codified in 19 C.F.R. § 353.29(i)(2) (1997).

III

STANDARD OF REVIEW

This Court must uphold Commerce's scope determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (1994).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). "It is not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." Timkin Co. v. United States, 12 CIT 955, 962, 699 F. Supp. 300, 306 (1988), aff'd, 894 F.2d 385 (Fed.Cir. 1990).

Furthermore, "substantial evidence supporting an agency determination must be based on the whole record. The 'whole record' means that the Court must consider both sides of the record. It is not sufficient to examine merely the evidence that sustains the agency's conclusion." E.I. DuPont de Nemours & Co. v. United States, 17 CIT 1266, 1268, 841 F. Supp. 1237, 1240 (1993) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)) (citation omitted).

IV

DISCUSSION

A

Commerce's Determination that the Candle at Issue Falls Within the Scope of the Order is Supported by Substantial Evidence on the Record and Otherwise in Accordance with Law.

Plaintiff concedes that "Commerce is correct in suggesting that a review of substantial evidence in the record in accordance with 19 C.F.R. § 353.29(i)(1) is dispositive of the issue of

whether or not the wax-filled terracotta heart shaped candle is within the scope of the Antidumping Order . . . ." Plaintiff Russ Berrie & Company, Inc.'s Motion For Judgment On The Agency Record And Brief In Support Of Motion Thereof ("Plaintiff's Brief") at 7. Plaintiff contends, however, that Commerce's conclusion that the candle is within the scope of the Order is in direct contravention of the evidence and is not supported by the law. Id. Plaintiff argues that a review of the "'description'" Commerce relied upon and an examination of the candle at issue reveal that the item falls squarely within the novelty candle exception. Id.

1.

Plaintiff's Candle is a Wax-Filled Container that Falls Within the Scope of the Order.

Plaintiff argues that the candle at issue does not fall within the language of the Order because (1) the scope of the Order is limited to wax-filled containers made of glass and (2) Commerce's use of the adjective "various" to describe the wax-filled containers indicates that it did not intend for every wax-filled container to be within its scope.

a.

Commerce's Disregard of the ITC's More Limited Definition of the Scope in its Preliminary
Determination Was in Accordance with Law.

Plaintiff contends that the scope of the Order is limited to wax-filled containers made of glass because the ITC's <u>preliminary</u> determination included only wax-filled <u>glass</u> containers. Id. at 7-8. In its <u>preliminary</u> determination, the ITC indicated that "'[t]he imports from the PRC in this investigation are petroleum wax candles in various shapes and sizes, including tapers, columns, spirals, straight-sided dinner candles, votives and petroleum wax-filled *glass* containers.'" Id. at 8 (quoting <u>Determination of the Comm'n in Investigation No. 731-TA-282 (Preliminary) Under the Tariff Act of 1930, Together with the Information Obtained in the</u>

Investigation, USITC Publication 1768, 1985 ITC Lexis 122 (Oct. 1985) ("USITC Pub. 1768"))

(emphasis added). Plaintiff argues that, in spite of the omission of the term "glass" from the

phrase "wax-filled glass containers" in the original petition and the Order, "it is clear from the

record that when the language of the Antidumping Order was finalized to read 'and various wax

filled containers', the term various was *originally* intended to refer specifically to petroleum wax

filled glass containers." Id. at 8.

Commerce has the inherent authority to define the scope of an antidumping duty

investigation and to clarify the statement of its scope. Koyo Seiko Co. v. United States, 17 CIT

1076, 1078, 834 F. Supp. 1401, 1403 (1993), aff'd, 31 F.3d 1177 (Fed. Cir. 1994). Commerce's

authority to define and clarify the scope is codified in 19 C.F.R. § 353.29(i) (1997). Under that

regulation, the starting point for determining whether merchandise is within the "class or kind" of

merchandise described in an antidumping order is to examine the description of the merchandise

in the petition, the initial investigation, and the determinations of the Secretary and the ITC to

determine whether such descriptions are dispositive of the matter. 19 C.F.R. § 353.29(i)(1)

(1997).

Here, Commerce determined that the descriptions of the subject merchandise contained in

the petition, the final determinations of Commerce and the ITC, the Order and subsequent scope

rulings were dispositive of the issue. Final Scope Ruling, AR doc. 6, at 2. First, Commerce

noted that the petition filed by NCA requested that the investigation cover:

> candles [which] are made from petroleum wax and contain fiber or paper-cored
> wicks. They are sold in the following shapes: tapers, spirals, and straight-sided
> dinner candles; rounds, columns, pillars; votives; and various wax-filled
> containers. These candles may be scented or unscented . . and are generally used
> by retail consumers in the home or yard for decorative or lighting purposes.

Id. at 2-3 (citing Antidumping Petition, September 4, 1985, at 7) (emphasis added). Second,

Commerce noted that it consistently defined the scope of the investigation in its notice of

initiation, preliminary and final Less Than Fair Value ("LTFV") determinations and Order as:

> Certain scented or unscented petroleum wax candles made from petroleum wax
> and having fiber or paper-cored wicks. They are sold in the following shapes:
> tapers, spirals, and straight-sided dinner candles; rounds, columns, pillars, votives;
> and <u>various wax-filled containers</u>.

<u>Id.</u> at 3 (citing <u>Petroleum Wax Candles from the People's Republic of China: Initiation of

Antidumping Duty Investigation</u>, 50 Fed. Reg. 39,743 (1985) ("Initiation of Antidumping Duty

Investigation"); <u>Petroleum Wax Candles from the People's Republic of China; Preliminary

Determination of Sales at Less Than Fair Value</u>, 51 Fed. Reg. 6,016 (1986); Final Determination

of Sales at Less Than Fair Value, 51 Fed. Reg. 25,085; Antidumping Duty Order, 51 Fed. Reg.

30,686)) (emphasis added). Finally, Commerce noted that the ITC, in its <u>final</u> determination,

adopted a similar definition of the "like product" subject to its determination. <u>Id.</u> at 3.

Commerce does not discuss the discrepancy between the scope definition set out in the ITC's

preliminary and final injury determination.

The Court notes that the ITC may have inadvertently limited the scope of its preliminary

injury investigation to "glass" wax-filled containers; following its description of the scope it cites

Commerce's notice of the initiation of an antidumping duty investigation, 50 Fed. Reg. 39,743,

which does not limit the scope in that manner. The notice states that the scope includes, <u>inter

alia</u>, "various wax-filled containers." Initiation of Antidumping Duty Investigation, 50 Fed. Reg.

at 39,744.

Indeed, although the ITC only refers to "petroleum wax-filled glass containers" as within

the scope of its preliminary investigation, USITC Pub. 1768, 1985 ITC Lexis 122, at *4, the

record shows no definitive ITC intent to exclude other types of wax-filled containers from the

scope of its investigation.  The ITC did not explain the reason for its decision to amend the final

determination to include "various wax filled containers."  In its preliminary investigation,

however, the ITC discusses "glass" wax-filled containers only briefly in a footnote.  See USITC

Pub. 1768, 1985 ITC Lexis 122, at *5 n.8.  That discussion related to the potential inclusion of

Beeswax within the scope of the Order:

> In the event of a final investigation, more conclusive data will be required about
> the extent to which domestically produced beeswax candles are fungible with
> petroleum wax candles.  Data will be obtained to determine if all investigated
> styles and shapes of candles have similar characteristics and uses.  In particular,
> information will be developed on domestic production and uses of petroleum
> wax-filled glass containers.

Id.

In its final determination, the ITC mentions "glass" wax-filled containers twice.  First, in

considering whether beeswax candles should be included properly within the scope, the ITC

explained that

> [i]n making a like product determination in this investigation, we have considered
> whether candles made of materials other than petroleum, principally beeswax,
> should be considered a part of the like product. . . . Beeswax candles are
> composed of more than 50 percent beeswax.  They are manufactured by U.S.
> producers principally for religious and specialty markets, and are priced
> considerable higher than petroleum wax candles.  Ninety-five percent of beeswax
> candle shipments from 1983 to 1985 were to churches and religious dealers.  The
> remaining 5 percent were beeswax dinner candles.  Ninety-four percent of the
> domestic beeswax shipments were for wax-filled glass containers used in religious
> observances and 'other' miscellaneous candles such as straight-sided altar and
> sanctuary candles.

Determination of the Commission in Investigation No. 731-TA-282 (Final) Under the Tariff Act

of 1930, Together With the Information Obtained in the Investigation, USITC Publication 1888,

1986 ITC Lexis 268, at *5-6 (Aug. 1986) (emphasis added).

Second, in a footnote, the ITC explained that "[a]lthough the greatest domestic

production, by volume, is for wax-filled glass containers, in 1985 Chinese imports were reported for all types of candles." Id. at *10 n.17 (emphasis added).

Finally, the role of the ITC is to "determine[] what domestic industry produces products like the ones in the class defined by [Commerce] and whether that industry is injured by the relevant imports." Algoma Steel Corp. v. United States, 12 CIT 518, 522-23, 688 F. Supp. 639, 644 (1988), aff'd, 865 F.2d 240 (Fed. Cir. 1989). The ITC does not have the authority to exclude from a like product determination merchandise corresponding to that within the scope of Commerce's investigation. Wheatland Tube Co. v. United States, 973 F. Supp. 149, 158 (CIT 1997), dismissed per parties' agreement, 152 F.3d 938 (Fed. Cir. 1998) (citing United States Steel Group v. United States, 18 CIT 1190, 1197 n.6, 873 F. Supp. 673, 683 n.6 (1994)). Given that the ITC cannot limit the scope of an investigation, Commerce's disregard of the ITC's more limited definition of the scope in its preliminary determination was in accordance with law.

b.

Commerce's Interpretation of "Various" as an Expansive Rather Than Limiting Adjective is in Accordance with Law.

Plaintiff contends that the use of the adjective "various" shows that "it is clear that the [sic] Commerce did not intend for every wax-filled container to be subject to the Antidumping order." Plaintiff's Brief at 8. Plaintiff refers to Webster's Third New International Dictionary's definition of "various" "as being one of a group: individual, separate" to indicate that "when the final Antidumping order was revised to provide for various wax-filled containers, the intent was that certain wax-filled containers would be outside of the Antidumping order." Id. Plaintiff argues that if Commerce had intended to include all wax-filled containers within the scope of the Order, then it would not have qualified the phrase with the adjective "various." Id.

Additionally, at oral argument, Plaintiff emphasized an apparent contradiction between Commerce's use of "various" in the Order and the agency's interpretation of "various" to mean "any" in its Final Scope Ruling. In its discussion of the applicability of the identifiable object portion of the novelty candle exception to wax-filled containers, Commerce stated that

> while the scope of the order is specifically limited to certain shapes for those candles not in containers, there is no such limitation for wax-filled containers. The scope of the order simply states that 'various wax-filled containers' are included without respect to their configuration. Therefore, <u>any</u> wax-filled container, including a heart-shaped container, is properly included within the scope of the order.[2]

Final Scope Ruling, AR doc. 6, at 7-8 (emphasis added).

"In accordance with Commerce's freedom to interpret an antidumping duty order, the Court views Commerce's interpretation of its scope description with deference." <u>Gulf States Tube Div. v. United States</u>, 981 F. Supp. 630, 636 (CIT 1997).

Plaintiff's argument that "various" is a limiting adjective fails for several reasons. First, the exemplars that follow the dictionary definition cited by Plaintiff do not support its interpretation of the adjective. The definition referred to by Plaintiff is the seventh definition for the adjective "various:" "being one of a group: INDIVIDUAL, SEPARATE." Webster's Third New International Dictionary (1993). Two exemplars that follow this definition are (1) "refunds to the ~ club members" and (2) "distribute taxes equitably among the ~ economic groups."[3] In

---

[2]     In that discussion, Commerce noted that this determination was consistent with the Final Scope Ruling - - Petroleum Wax Candles From the People's Republic of China; Star Merchandise Co., at 5-6 (July 27, 1994) ("Final Scope Ruling: Star Merchandise Co.") (a heart-shaped tin with a cartoon-like rendering of a "bear family" was within the scope of the Order because, <u>inter alia</u>, nothing inherent in its design related to a specific holiday or other special occasion). Final Scope Ruling, AR doc. 6, at 8.

[3]     Although Plaintiff cited to the 1967 edition of Webster's Third New International Dictionary, Plaintiff's Brief at 8, a copy was not provided to the Court. During oral argument, Plaintiff's counsel confirmed that his copy of the 1967 edition was identical to the Court's copy

these examples, although each member or group is individual and separate from the other, none is excluded from the distribution taking place. Contrary to Plaintiff's assertion, "various" is not limiting in this context.

Second, the synonym following this definition is the word "different." "Different," in the context of this definition, emphasizes the individuality of the objects, again not the exclusion of any of them. Third, the most common[4] definition of "various" is the third definition listed: "of differing kinds: being a varied assortment: MULTIFARIOUS." This definition also does not limit those items that fall within a group. Finally, there is no evidence in the LTFV determinations or the Order that Commerce intended "various" to mean one of the definitions listed in Webster's Third New International Dictionary.

The Court will not presume that "various" is a limiting adjective; the word has multiple definitions, the most common of which is not limiting, and there is no evidence in the record that Commerce intended the word to be interpreted in a limiting fashion. The Court defers to Commerce's interpretation of "various" in its Final Scope Ruling.

2.

Plaintiff's Candle is not Excludable Under the Novelty Candle Exception.

Plaintiff argues that the wax-filled terracotta heart-shaped container falls within the novelty candle exception as (1) an identifiable object because it is in the shape of a heart and (2) a novelty candle having a scene or symbol of a religious holiday or special event because it is

---

of the 1993 edition with regard to definitions three and seven, except for an additional exemplar following definition number seven in the 1993 edition. That additional exemplar is "the twelve ~ departments of the group." Webster's Third New International Dictionary (1993).

[4]      At oral argument, Plaintiff's counsel did not dispute that this definition was more common than the one cited in Plaintiff's brief.

specially designed for use only with the Valentine's Day holiday. Plaintiff's Brief at 9-11.

a.

Plaintiff's Candle Does Not Fall Within the Identifiable Object Portion of the Novelty Candle
Exception.

Plaintiff contends that the wax-filled container is "in the shape of a heart, clearly an

identifiable object," Plaintiff's Brief at 9; however, no authority is provided to support this

argument.[5] In its scope request, Plaintiff argued that the identifiable object portion of the novelty

---

[5]     During oral argument, Plainitff's counsel referred the Court to page 8 of Commerce's June 11, 1998 scope ruling in Meijer Inc. as support for this contention. There Commerce stated that

> [l]ike Meijer's 'Valentine Heart' and 'Easter Bunny Head' candles, the company's heart-shaped candle with a wax heart base qualifies for exclusion from the order on petroleum wax candles from the PRC on the ground that it is an identifiable object (*i.e.*, a heart) and not because of Meijer's suggestion that it is sold exclusively in connection with Valentine's Day.

Final Scope Ruling - Antidumping Duty Order on Petroleum Wax Candles From the People's Republic of China (A-570-504); Meijer Inc., at 8 (June 11, 1998) ("Final Scope Ruling: Meijer, Inc.").

Commerce's conclusion does not support Plaintiff's argument because Commerce was analyzing whether a candle, not a wax-filled container, fell within the identifiable object portion of the novelty candle exception. Therefore, this portion of the ruling cannot be relied upon as authority for Plaintiff's argument that a wax-filled container should fall under that portion of the exception.

Furthermore, the Court notes that while in that ruling Commerce did find that a wax-filled porcelain container in the shape of a rabbit should be excluded from the Order because it was an identifiable object (i.e., a rabbit), Final Scope Ruling: Meijer, Inc., at 5-6, the decision was subsequently overruled after Commerce elected to initiate an inquiry under 19 C.F.R. § 351.225(b) (1998) into that portion of its ruling. See Memorandum from Roland L. MacDonald, Executive Director, Office 7, Office of AD/CVD Enforcement Group III, Int'l Trade Admin., U.S. Dep't of Commerce, to All Interested Parties of 9/8/98; Final Affirmative Scope Ruling - Antidumping Duty Order on Petroleum Wax Candles From the People's Republic of China (A-570-504); Meijer Inc. (Jan. 6. 1999) ("Final Affirmative Scope Ruling"). In its Final Affirmative Scope Ruling, Commerce reiterated that the identifiable object exemption "applies solely to petroleum wax candles which themselves are in the shape of identifiable objects, and cannot be applied to exclude wax-filled containers from the scope of the order, even where the containers are in the shape of identifiable objects," as set forth in the scope ruling under review here. Final Affirmative Scope Ruling, at 4.

candle exception applies to exclude the candle because

> candles shaped in the form of hearts, as are at issue in this instance, are in the form of identifiable objects, within the meaning of the [exception]. . . . We believe it is irrelevant that the candle in this instance is imported in a heart shaped container. The candle itself is heart shaped and would be heart shaped if it were imported separately.

Plaintiff's Scope Request, AR doc. 2, at 4.

> In its Final Scope Ruling, Commerce responded that

> while the scope of the order is specifically limited to certain shapes for those candles not in containers, there is no such limitation for wax-filled containers. The scope of the order simple states that "various wax-filled containers" are included without respect to their configurations. Therefore, any wax-filled container, including a heart-shaped container, is properly included within the scope of the order. This determination is consistent with a previous scope determination that a heart-shaped wax-filled container is included within the scope of the order. See *Final Scope Ruling: Request by Star Merchandise Company*, at 5-6, July 27, 1994 (Star Merchandise).

Final Scope Ruling, AR doc. 6, at 7-8.[6]

While Commerce has the inherent authority to clarify and interpret the statement of an antidumping order's scope, it cannot alter or amend that scope. See Koyo Seiko Co., 17 CIT at 1078, 834 F. Supp. at 1403; UST, Inc. v. United States, 9 CIT 352, 356 (1985). "Each stage of the statutory proceeding maintains the scope passed on from the previous stage." UST, Inc., 9 CIT at 356. "An expansion of the scope of the order is impermissible and not in accordance with law." Eckstrom Indus., Inc. v. United States, 27 F. Supp. 2d 217, 222 (CIT 1998).

---

[6]     In Star Merchandise, Commerce determined that a heart-shaped tin with a cartoon-like rendering of a "bear family" was within the scope of the Order because, inter alia, nothing inherent in its design related to a specific holiday or other special occasion. See Final Scope Ruling: Star Merchandise Co., at 6. Although the identifiable object exception was not discussed, the Court infers that if the exception had been applicable it would have been used to exclude the heart-shaped, wax-filled container. Since it was unmentioned, it was apparently thought inapplicable.

Through the Customs Information Exchange of 1987, Commerce identified a limited set of candles, specifically certain "novelty candles," that fall outside the scope of the Order. Customs Information Exchange of 1987, AR doc. 7. It stated that figurine candles and candles shaped in the form of identifiable objects were outside the scope of the Order. Id. By doing so, it was not creating an exception for figurines and candles in the form of identifiable objects generally. Rather, it clarifies that such candles were excluded from the scope of the Order because shapes covered by the Order are tapers, spirals, straight-sided dinner candles, rounds, columns, pillars, and votives. See Antidumping Duty Order, 51 Fed. Reg. 30,686. Because the Order did not distinguish among wax-filled containers based on shape, as it did with the other candles, Commerce could not make that distinction in its novelty candle exception.

b.

Plaintiff's Candle Does Not Fall Within the Religious Holiday or Special Event Portion of the
Novelty Candle Exception.

Plaintiff argues that the wax-filled, terracotta heart-shaped container is also excludable from the Order as "a novelty candle having a scene or symbol of a religious holiday or special event." Plaintiff's Brief at 9.

i.

Plaintiff's Candle Does Not Have Any Inherently Distinguishing Characteristic that Would Keep
It from Being Sold on Any Day of the Year.

First, Plaintiff contends that "the wax-filled terracotta heart shaped container is specially designed for use only with the Valentine's Day holiday." Id. Plaintiff supports this statement with a general citation to page 5 of its rebuttal comments. Id. On that page of the rebuttal comments, as part of Plaintiff's analysis under the Diversified Products criteria, it states that "the item is a heart shaped candle in a heart shaped terracotta container specifically designed,

marketed and sold for Valentine's Day."  Letter of 10/1/96, AR doc. 5, at 5.  At oral argument,

Plaintiff emphasized that its assertion was also supported by the inclusion of the candle at issue

on page 4 of what it identified as Russ Berrie's 1996 Valentine's Day catalogue.

Second, Plaintiff argues that Valentine's Day is a religious holiday that has been

transformed into a special event symbolized by the heart.  Plaintiff's Brief at 9.  To support this

argument, Plaintiff quotes the following passage from its rebuttal comments:

> Valentine's Day is a curious blend of a religious holiday which, over the years, has
> been transformed into a special event, a day for individuals to show their love and
> affection for others, thus, making it a special, out of the ordinary day.  The one
> symbol which has become universally known to symbolize Valentine's Day is the
> heart.

Id. (citing AR doc. 5, at 3-4).  At oral argument, Plaintiff argued that the foundation for this

quoted passage is common knowledge of which the Court could take judicial notice.

During oral argument, Plaintiff's counsel conceded that the Court could take judicial

notice of the fact that hearts and flowers are sent throughout the year as signs of affection.

Plaintiff's counsel countered, however, that if a consumer went into a store looking for flowers,

the preponderance of the time she would find flowers; but, if the consumer was looking for a

heart, she would have to hunt for it, and, for the most part, she would most likely find something

left over from Valentine's Day.

With respect to the holiday exception, Commerce found that "the heart shape of [Russ

Berrie's] candle does not limit its use to a particular holiday, as required by the holiday candle

exception to the scope."  Final Scope Ruling, AR doc. 6, at 6.  As support, Commerce cited its

prior decision in Final Scope Ruling - - Antidumping Duty Order on Petroleum Wax Candles

From the People's Republic of China (A-570-504); Springwater Cookie and Confection (Feb. 14,

1995) ("Final Scope Ruling: Springwater Cookie and Confection"):

> Nothing inherent in the design of the subject candles would limit their use to a specific occasion . . . [T]he sole distinguishing characteristic of the Sweetheart candle is its pink heart. [However,] the year-round ubiquity of this particular shape renders it meaningless as a holiday scene or symbol.

Id. (quoting Final Scope Ruling: Springwater Cookie and Confection, at 3-4). Additionally, Commerce cited to a redetermination on remand for Final Scope Ruling: Springwater Cookie and Confection to explain that

> [t]he familiar two-lobed heart design is ubiquitous as a symbol of affection or familial or romantic love . . . [I]t is used throughout the year in, for example, greeting cards . . . [and] is also commonly associated with weddings and wedding anniversaries . . . fall[ing] at all times of the year.

> This finding is consistent with the Department's rulings with regard to other candles incorporating the same heart shape in their designs. *See Two's Company*, January 13, 1995; *see* *also, Trade Advisory Group*, April 9, 1993.

Id. (quoting Petroleum Wax Candles from the People's Republic of China, Final Results of Redetermination Pursuant to Court Remand, Springwater Cookie and Confections, Inc. v. United States, Court. No. 95-03-00283, at 12-13 (Springwater Scope Remand), aff'd, Springwater v. U.S., Slip Op 96-160 (CIT September 25, 1996)).[7]

In response to Russ Berrie's contention in its scope request that the dried flowers embedded in the candle qualify it for novelty status, Commerce stated that

> [t]he flowers pressed into the candle's surface do not qualify [Russ Berrie's] candle as a novelty candle as defined by the Department. The flowers are not holiday symbols which would limit the candle's use to a particular holiday. Indeed, [Russ Berrie's] scope request labels the flowers as 'symbols' but fails to identify what holiday they purportedly symbolize.

Final Scope Ruling, AR doc. 6, at 7.

---

[7]      Springwater withdrew its appeal to the U.S. Court of International Trade of the heart design candle portion of the determination after the issuance of the remand results. Final Scope Ruling, AR doc. 6, at 6.

Since the antidumping law and antidumping duty orders are remedial in nature, exceptions to them should be construed narrowly and limited to effect the remedy intended.  See Bomont Indus. v. United States, 13 CIT 546, 550, 718 F. Supp. 958, 962 (1989) ("[T]he antidumping law is remedial, not punitive, and remedial statutes are to be construed liberally.") (footnote omitted); Piedmont & N. Ry. Co. v. Interstate Commerce Comm'n, 286 U.S. 299, 311-312 (1932) ("The Transportation Act was remedial legislation, and should therefore be given a liberal interpretation; . . . but for the same reason exemptions from its sweep should be narrowed and limited to effect the remedy intended.").

The Court will interpret the novelty candle exception promulgated by Commerce after the issuance of the Order narrowly to preserve the efficacy of the Order.  Consequently, a candle must be specially designed for use only in connection with a religious holiday or special event to fall within the novelty candle exception.

The weakness in Plaintiff's special holiday goods argument is three-fold.  First, even if the wax-filled container at issue is marketed through Russ Berrie's Valentine's Day catalogue, there is no evidence that the catalogue is the sole means for marketing that container.[8] Furthermore, even if it were the sole means of advertising the merchandise, a retailer could purchase the item from the Valentine's Day catalogue and, yet, sell it year round.  Second, even if the container at issue were sold to a merchant for Valentine's Day, a consumer would not be able to distinguish between the candle sold for Valentine's Day and an identical candle that was sold any other day of the year.  Unlike a Santa Claus candle which a consumer is unlikely to purchase

_____

[8]     How Plaintiff advertised the candle is irrelevant because it is part of a 19 C.F.R. § 353.29(i)(2) (1997) analysis which is unnecessary here because Commerce's 19 C.F.R. § 353.29(i)(1) (1997) analysis is dispositive.  Since Plaintiff raised this argument, however, the Court will briefly analyze it.

outside of the Christmas season, a consumer might well purchase a heart-shaped wax-filled container at any time of the year as a sign of affection.[9]  Finally, Commerce has consistently found that floral designs are not sufficient "symbols" of a particular holiday.  See, e.g., Final Scope Ruling - - Antidumping Duty Order on Petroleum Wax Candles From the People's Republic of China (A-570-504) - - Request of Lew-Mark Baking Co., at 3-4 (Dec. 16, 1994) ("Lew-Mark's Pansy tin candle does not depict any Christmas scenes or symbols in its design, and therefore cannot be considered a candle <u>specially designed for use only in connection with the Christmas, or any other, holiday season</u>.") (emphasis added); Final Scope Ruling - - Antidumping Duty Order on Petroleum Wax Candles From the People's Republic of China (A-570-504); Primark Int'l, at 3 (June 1, 1993) (designs with flowers, leaves, and berries do not depict requisite "'scene or symbol' of any specific occasion of special event").   Commerce's conclusion that the wax filled container at issue is not specially designed for use only in connection with Valentine's Day is reasonable as a matter of law, and because there is no substantial evidence of an inherently distinguishing characteristic that would keep it from being sold throughout the year, its conclusion had sufficient factual support.

ii.

The Customs Service's Classification of a Product Under a Particular Tariff Hearing Does Not Make Commerce's Scope Analysis Legally Incorrect.

Plaintiff argues that its position that a heart is a symbol of Valentine's Day is "fully

---

[9]      At oral argument, Plaintiff's counsel conceded that Santa Claus and heart-shaped items are different.  Specifically, Plaintiff's counsel conceded that it is unlikely that during July a consumer would purchase a Santa Claus shaped candle as a gift as compared to a heart-shaped candle.  As the Court pointed out to counsel, if, in July, one purchases hearts and flowers for one's spouse, the likely intent is quite evident; on the other hand, a July gift of a Santa Claus figure will surely, at best, give rise to puzzlement.

supported and embraced by this Court" in <u>Midwest of Canon Falls Inc. v United States</u>, 20 CIT

123 (1996), <u>aff'd in part and reversed in part on other grounds</u>, 122 F.3d 1423 (Fed. Cir. 1997).

Plaintiff's Brief at 9.

       In <u>Midwest</u>, the Court reviewed the classification of, <u>inter</u> <u>alia</u>, a metal, heart-shaped

wreath with dozens of small, heart-shaped decorations attached to it, painted bright red.

<u>Midwest</u>, 20 CIT at 123, 132-33.  According to the Court, "Plaintiff's witnesses testified that the

wreaths could be given year-around, but that they would be difficult to find in stores outside the

Valentine's Day season, which is the only time they are offered to consumers." <u>Id.</u> at 132.  The

wreath was advertised to retailers in a catalogue that featured Valentine's Day and Easter

products. <u>Id.</u>  The Court's inspection of the wreath confirmed that it was designed for decorating

the home on Valentine's Day. <u>Id.</u>  The Court stated that the wreath's "heart shape and the color

red are traditionally associated with Valentine's Day." <u>Id.</u>  Therefore, the Court concluded that

the wreath should be classified under HTSUS Heading 9505, which the Explanatory Notes stated

included decorations "'which are traditionally associated with a particular festival,'" because the

Court found it to be a more specific heading than Heading 8306 for statuettes or ornaments of

base metal.  <u>Id.</u> at 132-33 (quoting Explanatory Notes, 95.05(A)(1)).

       "It is well settled that a tariff classification by the Customs Service does not govern an

antidumping determination regarding class or kind.  It is the responsibility of [Commerce] to

interpret the term class or kind in such a way as to comply with the mandates of the antidumping

laws, not the classification statutes.  A product's tariff classification is merely of peripheral

interest to suggest the general nature of a good." <u>Torrington Co. v. United States</u>, 14 CIT 507,

512-13, 745 F. Supp. 718, 722 (1990), <u>aff'd</u>, 938 F.2d 1276 (Fed. Cir. 1991) (citations omitted).

       This Court has also established that

determinations under the antidumping law may properly result in the creation of classes which do not correspond to classifications found in the tariff schedules or may define or modify a known classification in a manner not contemplated or desired by the Customs Service. Within the context of an antidumping proceeding the administering agency, at the proper time, can define the class in its terms. The Customs Service is placed in a ministerial role by the antidumping law. Accordingly, it may not independently modify, directly or indirectly the determinations, their underlying facts, or their enforcement.

Royal Business Mach., Inc. v. United States, 1 CIT 80, 87 n.18, 507 F. Supp 1007, 1014 n.18 (1980), aff'd, 669 F.2d 692 (CCPA 1982) (citations omitted).

Based upon the distinction between the authority of the Customs Service to classify according to tariff classifications and the power of agencies administering the antidumping law to determine a class and kind of merchandise, the Court's classification of the metal wreaths in Midwest under Heading 9505 does not make Commerce's scope analysis legally incorrect.

Furthermore, the issue in Midwest was the classification under the United States Harmonized Tariff Schedule Subheading 9505 covering decorations "'which are traditionally associated with a particular festival.'" Midwest, 20 CIT at 132 (quoting Explanatory Notes, 95.05(A)(1)). In contrast, for exclusion from the clear language of the scope of the Order, the container must have been "specially designed for use only in connection with" Valentines Day. Customs Information Exchange of 1987, AR doc. 7 (emphasis added). Although the heart shape may be associated with Valentine's Day, nothing in the administrative record supports a finding that a wax-filled, heart-shaped terracotta container is specially designed for use only in connection with Valentine's Day.

iii.

Commerce's Legal Reasoning and Conclusion are in Accordance with Law.

Plaintiff also argues that Commerce should have employed the rationale used by this

Court in Spingwater Cookie & Confections, Inc. v. United States, 20 CIT 1192 (1996), to

determine that the wax-filled terracotta heart-shaped containers are outside the scope of the

Order.  Plaintiff's Brief at 10.  Plaintiff contends that by using this "rationale" "the Court in the

instant case should find, that the heart is a symbol associated with Valentine's Day because it is

of a distinguishable shape and color clearly associated with that particular holiday."  Id.

     In Springwater, the Court, inter alia, reversed Commerce's finding that holly candles are

within the scope of the Order.  Springwater, 20 CIT at 1192.  By analogizing to and

distinguishing from prior scope rulings, the Court reasoned that

> [a]s the holly sprigs are indeed a symbol associated with Christmas and 'flowers,
> leaves, and berries' are not, the Holly candles is better compared to the Christmas
> bells candle in *Success Sales* [than the containers with lids with designs of
> flowers, leaves, and berries in *Primark Int'l*].
>     The Holly candle also cannot be compared to the 'Jingle Bells' candle ruled
> to be within the scope of the antidumping order in Commerce's final scope ruling
> with regard to petroleum wax candles from the PRC imported by Two's Company,
> Inc. . . . [because] Commerce determined that the bells on the 'Jingle Bells' candle
> in *Two's Co.* 'can be removed from the candles without damage to the pillars' and
> the holly springs cannot be removed from the Holly candles.

Id. at 1196 (citations omitted).

     The Court does not consider the reasoning used in Springwater to be a "rationale," as

Plaintiff asserts.  Rather, it is the standard process of legal reasoning used in our common law

system.  Here, Commerce used such reasoning to determine that the wax-filled, terracotta heart-

shaped container did not qualify for the holiday candle exception.  See Final Scope Ruling, AR

doc. 6, at 6-7.  Commerce looked to its prior determination in a similar case, Final Scope Ruling:

Springwater Cookie and Confection, and considered its explanation in a redetermination on

remand for the Springwater scope review.  Id.  Commerce quotes the following language from

the remand determination highlighting the finding's consistency with prior rulings:

> This finding is consistent with [Commerce's] rulings with regard to other candles incorporating the same heart shape in their designs. *See Two's Company*, January 13, 1995; *see* *also, Trade Advisory Group*, April 9, 1993.

Id. at 6.

In Two's Company, Commerce determined that pillar candles decorated with ornaments, including heart ornaments, did not have any characteristics that would exclude them from the scope of the Order because, inter alia, the ornaments did not symbolize any specific event or holiday. Final Scope Ruling - - Antidumping Duty Order on Petroleum Wax Candles From the People's Republic of China - - Two's Co., at 4 (Jan. 13, 1995). In Trade Advisory Group, Commerce determined that a candle with a heart, diamond and cross carved into its terracotta container was within the scope of the Order because the party requesting the scope ruling (1) failed to provide evidence that the three symbols represent "'a scene or symbol of [a] ... religious holiday'" and (2) failed to demonstrate how the combination of symbols on the container limited its candle to religious use. Final Scope Ruling -- Antidumping Duty Order on Petroleum Wax Candles From the People's Republic of China (A-570-504); Trade Advisory Group and Autom Co., at 4 (Apr. 9, 1993).

Commerce's analysis of its prior scope rulings to reach a determination parallels the analysis used by the Court in Springwater and satisfies the "principle of administrative law that an 'agency must either conform to its prior norms and decisions or explain the reason for its departure from such precedent.'" Torrington Co., 14 CIT at 519, 745 F. Supp. at 727 (quoting Mississippi Valley Gas Co. v. Federal Energy Regulatory Comm'n, 659 F.2d 488, 506 (5th Cir. 1981). Plaintiff cites no authority, and the Court has found none, holding that the heart is a symbol solely associated with Valentine's Day because of its distinguishable shape and color. See Plaintiff's Brief at 10. The Court, therefore, concludes that Commerce's analysis and

conclusion is in accordance with law.

B

Commerce Did Not Have to Conduct an Analysis Pursuant to 19 C.F.R. § 353.29(i)(2) (1997) Once It Determined, Pursuant to 19 C.F.R. § 353.29(i)(1) (1997), that the Wax-Filled Terracotta Heart-Shaped Container was Within the Description of the Merchandise Contained in the Petition, the Initial Investigation, and the Determinations of Commerce and the ITC.

Even though Plaintiff argues in its brief that the record evidence is dispositive, it also claims that the evidence in the record, including the item itself, the petition and the Secretary's determinations, warranted a finding by Commerce that the physical criterion alone were not dispositive and that an analysis using the additional criteria in 19 C.F.R. § 353.29(i)(2) was necessary. Plaintiff's Brief at 11.[10] According to Plaintiff, under such an analysis, the only conclusion is that the wax-filled terracotta heart-shaped container is expressly excluded from the scope of the Order. Id.[11] Plaintiff requests that this Court remand the Final Scope Ruling to Commerce with instructions that it conduct an investigation using the criteria set forth in 19 C.F.R. § 353.29(i)(2) and issue a decision consistent with other scope rulings. Id. at 13.

In its Rule 56.2(c) Statement, Plaintiff argues that "[b]y virtue of prior scope determinations issued by the Department, e.g. the September 3, 1991 scope determination issued to Fabri-centers regarding decorative ceramic pots containing citronella candles, it is clear that there are historical determinations by the Department which demonstrate the need to look beyond

---

[10]     At oral argument, Plaintiff's counsel clarified that Plaintiff was arguing that although it conceded that in certain situations the record evidence would be dispositive, in this case, the record evidence was not dispositive and further analysis was necessary.

[11]     Plaintiff provides the Court with a 19 C.F.R. § 353.29(i)(2) (1997) analysis allegedly supporting its contention that this analysis would result in the exclusion of the wax-filled containers at issue from the scope of the Order. Plaintiff's Brief at 12-13. The Court need not reach this detailed analysis because the Court has concluded that it was within Commerce's discretion to rely solely upon a 19 C.F.R. § 353.29(i)(1) (1997) analysis.

the scope language of the Antidumping Order to determine if particular goods are within the scope of the Order." Id. at 2, paragraph 6.

In its Summary of Argument, Plaintiff further argues that "[a]t the very least, given the visual impact of the wax-filled terracotta heart shaped candle, Commerce should have conducted an analysis using the additional criteria established in 19 C.F.R. 353.29(i)(2)." Id. at 5.  Plaintiff refers the Court to United States v. Carborundum Co., 536 F.2d 373 (CCPA 1976) "which provides, [that] certain factors must be looked at to determine whether imported merchandise is of a certain 'class or kind.'" Id.

Finally, in its brief, Plaintiff argues that a reevaluation of the scope determination pursuant to 19 C.F.R. § 353(i)(2) is required because

> Defendant has previously determined that candles in the form of identifiable objects or having scenes or symbols of other occasions (e.g., religious holidays or special events) are outside the scope of the Antidumping Order.  It has been judicially established that candles displaying symbols associated with holidays such as Christmas are also outside the order (see, *Springwater*, supra.)  Moreover, it has also been judicially established that the heart shape is traditionally associated with Valentine's Day, a recognized festive holiday. (See, *Midwest of Cannon Falls, Inc.*, supra.)

Id. at 14.  At oral argument, Plaintiff added that the use of the (i)(2) test in Final Scope Ruling - - Antidumping Duty Order on Petroleum Wax Candles From the People's Republic of China (A-570-504); Cherrydale Farms Confections ("Final Scope Ruling: Cherrydale Farms Confections") demonstrated the inconsistency in Commerce's use of the Diversified Products analysis, and, therefore, this case should be remanded for consideration under the (i)(2) factors.

As set forth above, to determine whether merchandise is within the "class or kind" of merchandise described in an antidumping order, Commerce begins by examining the descriptions of the merchandise in the petition, the initial investigation, and the determinations of the

Secretary and the ITC to determine whether such descriptions are dispositive. 19 C.F.R. § 353.29(i)(1) (1997). If the descriptions are dispositive, the regulation instructs Commerce to issue a final scope determination based upon these descriptions alone. See 19 C.F.R. § 353.29(i)(1) (1997); see also Nitta Indus. Corp. v. United States, 997 F.2d 1459 (Fed. Cir. 1993) (where the description in the antidumping order is sufficient to evaluate whether a product falls within the scope of that order, there is no need to look to other factors). If Commerce determines that the descriptions are not dispositive, an analysis under the Diversified Products factors is conducted. These factors are (i) the physical characteristics of the product; (ii) the expectations of the ultimate purchasers; (iii) the ultimate use of the product; and (iv) the channels of trade. 19 C.F.R. § 353.29(i)(2) (1997).

Plaintiff's contention that Commerce should have used the factors set forth in United States v. Carborundum Co., 536 F.2d 373 (CCPA 1976), is unpersuasive. The regulations set forth above, not Carborundum, provide the procedures and factors to be used by Commerce in a scope review. As stated earlier, a Customs case such as Carborundum is not authoritative in an antidumping case.

The regulations clearly state that it is within Commerce's discretion to determine whether the criteria set forth in 19 C.F.R. § 353.29(i)(1) (1997) are dispositive of the matter, and, if so, Commerce is to issue a final scope determination based upon these descriptions alone. These instructions are not qualified by whether or not Commerce has determined that in a prior scope ruling involving the same antidumping order a 19 C.F.R. § 353.29(i)(2) (1997) analysis was necessary. To the contrary, in each scope ruling, Commerce is to follow the procedure set forth in the regulations. Based upon the facts of each case, therefore, Commerce may arrive at different conclusions as to whether the more detailed § 353.29(i)(2) analysis is necessary.

Here, Commerce determined that the descriptions of the merchandise when compared to the scope language and past Commerce determinations were dispositive.  Although Commerce inquired into the Diversified Products factors to determine whether products in the Final Scope Ruling: Cherrydale Farms Confections and in the Final Scope Ruling for Fabri-centers of America, Inc.[12] were within the scope of the Order, a consideration of the descriptions contained in the record coupled with a visual inspection of the merchandise and reference to prior scope rulings were found dispositive here.  The Court defers to Commerce's conclusion because its analysis is supported by substantial evidence and is otherwise in accordance with law.

V

CONCLUSION

For the reasons set forth above, Commerce's scope determination is support by substantial evidence and otherwise in accordance with law.  Plaintiff's Motion for Judgment on the Agency Record and request for a remand are denied, and Commerce's Final Scope Ruling is affirmed.

_____
Evan J. Wallach, Judge

Dated: July 13, 1999
        New York, New York

---

[12]    Recommendation Memo -- Scope Inquiry on Petroleum Wax Candles From the People's Republic of China (A-570-504) (Sept. 3, 1991).