**ECKSTROM INDUSTRIES, INC.,**
**Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 00–1117.**

United States Court of Appeals,
Federal Circuit.

July 2, 2001.

Niall P. Meagher, Powell, Goldstein, Frazer & Murphy LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief were N. David Palmeter, and Susan M. Mathews.

Lucius B. Lau, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief was David M. Cohen, Director. Of counsel were Berniece A. Browne, Cindy G. Buys, and John D. McInerney, Attorneys, Department of Commerce, of Washington, DC.

Before BRYSON, Circuit Judge, ARCHER, Senior Circuit Judge, and GAJARSA, Circuit Judge.

ARCHER, Senior Circuit Judge.

Eckstrom Industries, Inc. ("Eckstrom") appeals the judgment of the Court of International Trade, *Eckstrom Industries v. United States*, 70 F.Supp.2d 1360 (Ct. Int'l Trade 1999), which affirmed the Department of Commerce's ("Commerce") final scope determination, *Eckstrom Industries v. United States*, Court No. 97–10–01913 (Dep't Commerce March 26, 1999) (scope determination on remand). Because this ruling is not supported by substantial evidence, we reverse.

## BACKGROUND

This appeal stems from an anti-dumping order concerning stainless steel, butt-welded pipe. *Certain Welded Stainless Steel Butt Weld Pipe Fittings From Taiwan*, 58 Fed.Reg. 33,250 (Dep't Commerce June 16, 1993) (final determination and antidumping duty order). The imposition of antidumping duties is governed by 19 U.S.C. § 1673 *et seq.* (1994); "dumping" is the sale of foreign merchandise in the United States at less than fair value. 19 U.S.C. § 1673(1). In order to curtail such dumping activity, Commerce may issue an antidumping order imposing duties on the imported merchandise. Antidumping orders may be issued when (1) an investigation by Commerce reveals that "a class or kind of merchandise is being, or likely to be" dumped in the United States; and (2) an additional investigation by the International Trade Commission ("ITC") determines that "an industry in the United States" is "materially injured" or "threatened with material injury," or "the establishment of an industry in the United States is materially retarded" by imports of that merchandise or sales of that merchandise for import. 19 U.S.C. § 1673.

On May 22, 1992, Flowline Division of Markovitz Enterprises, Inc. ("Flowline"), a U.S. producer of stainless steel butt-weld pipe fittings, filed a petition with the Department of Commerce, pursuant to the procedure authorized by 19 U.S.C. § 1673a(b), requesting antidumping investigations of certain stainless steel butt-

weld pipe fittings from Taiwan and Korea. The petition described the targeted merchandise as follows:

> The pipe fittings that are subject to this petition are classifiable under Item 610.8948 of the Tariff Schedules of the United States Annotated, and under 7307.23 of the Harmonized Tariff Schedule. This category covers both finished and unfinished fittings.
>
> More specifically, the fittings subject to this petition are designated under Specification ASTM A403/A403M 1991, the standard specification for Wrought Austenitic Stainless Steel Pipe Fittings.... In particular, the applicable dimensional specifications are ANSI B16.9–1986 and ANSI B16.2B–1986.... Stainless steel butt-weld fittings are used where one or more of the following conditions is a factor in designing the piping system: (1) corrosion of the piping system will occur if material other than stainless steel is used; (2) contamination of the material in the system by the system itself must be prevented; (3) high temperatures (in excess of 300 F) are present; (4) extreme low temperatures are present; (5) high pressures are contained within the system.

In response to this petition, Commerce initiated an investigation as to whether sales of such merchandise were made at less than fair value and the ITC initiated an injury investigation. 57 Fed.Reg. 26,-645 (Dep't Commerce June 15, 1992) (initiation of investigations). In conducting its injury investigation, the ITC sent questionnaires to U.S. producers, describing the merchandise subject to the investigation as "[f]ormed or forged stainless steel products used to connect pipe sections in piping systems" and further noted that such "fittings are provided for in subheading 7307.23.00 of the Harmonized Tariff Schedule of the United States (HTS)." *Id.*

On June 16, 1993, Commerce issued the final version of its antidumping order ("Order") concerning the stainless steel buttweld piping. *Certain Welded Stainless Steel Butt–Weld Pipe Fittings From Taiwan,* 58 Fed.Reg. 33,250 (Dep't. Commerce June 16, 1993) (final determination and antidumping duty order). The text of the Order repeats language from the petition and the injury investigation questionnaires, describing the subject merchandise as follows:

> The products subject to this investigation are certain stainless steel butt-weld pipe fittings, whether finished or unfinished, under 14 inches inside diameter.
>
> Certain welded stainless steel buttweld pipe fittings (pipe fittings) are used to connect pipe sections in piping systems where conditions require welded connections. The subject merchandise is used where one or more of the following conditions is a factor in designing the piping system: (1) Corrosion of the piping system will occur if material other than stainless steel is used; (2) contamination of the material in the system by the system itself must be prevented; (3) high temperatures are present; (4) extreme low temperatures are present; (5) high pressures are contained within the system.
>
> Pipe fittings come in a variety of shapes.... The pipe fittings subject to this investigation are classifiable under subheadings 7307.23.00 of the Harmonized Tariff Schedule of the United States (HTSUS).
>
> Although the HTSUS subheading is provided for convenience and customs purposes, our written description of the scope of these investigations is dispositive.

*Id.*

On August 14, 1997, Eckstrom filed a request with Commerce seeking a ruling

that its cast fittings, imported from Taiwan, were not within the scope of the Order. Cast stainless steel products, such as those imported by Eckstrom, are generally considered to be inferior to wrought stainless steel products. Cast stainless steel products are produced by simply pouring molten metal into a mold to form the desired finished product. Wrought stainless steel products, in contrast, are formed by working or shaping solid stainless steel into the desired end product. *The Making, Shaping and Treatment of Steel* (W. Lannkford, Jr., N. Samways, R. Craven eds., 10th ed.1985).

On September 29, 1997, Commerce responded to Eckstrom's request, determining that Eckstrom's cast fittings were within the scope of the Order. Eckstrom appealed this ruling to the Court of International Trade ("CIT"). After a hearing on the merits, the CIT ruled that Commerce's initial scope determination was not supported by substantial evidence. *Eckstrom Indus. v. United States*, 27 F.Supp.2d 217 (Ct. Int'l Trade 1998). The CIT further found, however, that it could not conclude that cast pipe fittings were unambiguously excluded from the scope of the Order. Therefore, the CIT remanded the matter to Commerce for reconsideration. *Id.*

On remand, Commerce initiated a formal scope inquiry, inviting comments from all interested parties, including Eckstrom and Flowline. Eckstrom was the only party to submit comments. Upon completion of this inquiry, Commerce concluded once again that Eckstrom's cast pipe fittings were within the scope of the Order, and issued a preliminary determination, again inviting interested parties to comment on this determination. Again, Eckstrom was the only party to submit any comments. Commerce then issued its Final Scope Determination, finding Eckstrom's cast fit-

tings within the scope of the Order. *Eckstrom Indus. v. United States*, Court No. 97–10–01913 (Dep't Commerce March 26, 1999) (scope determination on remand). Eckstrom appealed this determination to the CIT, and the CIT affirmed. *Eckstrom*, 70 F.Supp.2d 1360. Eckstrom then appealed to this court.

Eckstrom asserts error in Commerce's determination that Eckstrom's cast pipe fittings are included within the scope of the Order.

## DISCUSSION

In reviewing a decision by the CIT affirming a final determination of the agency, "we apply anew the court's statutorily-mandated standard of review to the administrative review ." *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir.1998) (citing *Torrington Co. v. United States*, 82 F.3d 1039, 1044 (Fed.Cir.1996)). Accordingly, we will reverse Commerce's final determination only where this determination is unsupported by substantial evidence on the record or otherwise not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i) (1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed.Cir.1984) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). In addition, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Id.* (citing *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 619–20, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966)).

The determination of whether a particular product is included within the scope of an antidumping order is governed by regulations published at 19 C.F.R. § 351.225

(2000). According to these regulations, in interpreting an order, Commerce must take into account "[t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of the Secretary (including prior scope determinations) and the Commission." 19 C.F.R. § 351.225 k(1); *accord Smith Corona Corp. v. United States*, 915 F.2d 683, 685 (Fed.Cir.1990) ("The class or kind of merchandise encompassed by a final antidumping order is determined by the order, which is interpreted with the aid of the antidumping petition, the factual findings and legal conclusions adduced from the administrative investigations, and the preliminary order."). When these criteria are not dispositive, Commerce must further consider "(i) [t]he physical characteristics of the product; (ii)[t]he expectations of the ultimate purchasers; (iii)[t]he ultimate use of the product; (iv)[t]he channels of trade in which the product is sold; and (v)[t]he manner in which the product is advertised and displayed." 19 C.F.R. § 351.225(k)(2).

■ Commerce enjoys substantial freedom in conducting such scope inquiries. *Ericsson GE Mobile Communications, Inc. v. United States*, 60 F.3d 778, 782 (Fed.Cir.1995). However, Commerce cannot "interpret" an antidumping order so as to change the scope of that order, nor can Commerce interpret an order in a manner contrary to its terms. *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1370 (Fed.Cir.1998).

Eckstrom asserts that Commerce improperly interpreted the scope of the Order, impermissibly expanding its scope to include Ecktrom's cast pipe fittings. We agree. Following the interpretive approach dictated by the pertinent regulations, we review the language of the Order and interpret its scope in light of the petition, and in light of the initial investigation and final determinations by the Secretary and the Commission. We conclude that substantial evidence does not support Commerce's ruling that Eckstrom's cast fittings are within the scope of the Order.

### I. The Order

The pertinent portion of the Order is reproduced above. Relying on different portions of the text and title of the Order, Eckstrom and the Government disagree as to the proper scope of the Order.

Pointing to the title of the Order, as well as to portions of the text, Eckstrom first argues that the Order is directed to "certain *welded* stainless steel butt-weld pipe fittings." 58 Fed.Reg. 33,250 (emphasis added). Welded pipe fittings are wrought fittings manufactured by shaping sheets of steel into lengths of pipe, welding the joined ends in order to form a seal. Such pipe fittings, Eckstrom argues, are entirely different from cast pipe fittings, which are formed by simply molding molten steel into the desired shape. Eckstrom further argues that the tariff classification cited by the Order, HTSUS 7307.23.00, does not include cast fittings, indicating that Eckstrom's cast fittings are not within the scope of the Order. Finally, Eckstrom notes that its cast fittings cannot meet four of the five conditions of use cited by the Order, further indicating that its fittings are not within the scope of the Order.

In response, the Government claims that the Order applies broadly to stainless steel butt-weld pipe fittings under fourteen inches in diameter. Eckstrom's pipe fittings fit this general description. The Government further notes that Eckstrom's fittings meet one of the five listed conditions of use, namely they may be used in systems where "corrosion of the piping system will occur if material other than stainless steel is used." Because the Order requires the subject pipe fittings to

meet only "one or more" of these conditions of use, and because Eckstrom's fittings meet one of these conditions, the Government argues that Eckstrom's fittings are within the scope of the Order.

With respect to Eckstrom's argument that the Order covers only "welded pipe" and pipe that is classifiable under HTSUS 7307.23.00, the Government disagrees that the Order is so limited. The Government first argues that the use of the modifier "welded" might merely refer to the manner in which the fittings are connected, via a butt-weld, or, alternatively, the use of this modifier may have been inadvertent. The Government also notes that Flowline's petition was not limited to welded pipe, but also referred to seamless pipe. Therefore, the Government argues, the Order cannot be limited to welded pipe. In regard to the HTSUS classification, the Government points out that this classification is immediately followed by a disclaimer indicating that the description of the merchandise in the Order, not the tariff classification, is dispositive.

■ We agree with Eckstrom that the Order cannot be given the broad construction urged by the Government. The Government's argument essentially reduces to an interpretation of the Order as covering *any* stainless steel butt-weld pipe fittings under fourteen inches in diameter. This construction is belied by the terms of the Order itself, which indicate that it applies only to *"certain* stainless steel butt-weld pipe fittings, whether finished or unfinished, under 14" in diameter." 58 Fed. Reg. 33,250 (emphasis added). We also find unpersuasive the Government's argu-

ment that Eckstrom's pipe fittings are the specific fittings contemplated by the Order because they meet one of the five conditions of use specified by the order. The single condition of use provision the Government relies on is "corrosion of the piping system will occur if material other than *stainless steel* is used." (emphasis added) However, Eckstrom's stainless steel fittings meet this condition simply because they are manufactured from stainless steel. Any other pipe fittings manufactured from stainless steel would similarly meet this condition of use. Therefore, in the context of an order directed to stainless steel pipe fittings, the Government's interpretation of the conditions of use provision renders this language mere surplusage. Accordingly, we reject the Government's argument that the stated conditions of use indicate that the Order covers Eckstrom's cast fittings. Indeed, the conditions of use listed in the Order are more supportive of Eckstrom's position than that of the Government because Eckstrom's pipe fittings cannot meet four of the five stated conditions of use.[1]

■ Similarly, the recitation of the tariff schedule, HTSUS 7307.23.00, which does not apply to cast pipe, also suggests that the Order does not cover Eckstrom's cast fittings.[2] While the Government is correct that the Order also includes a disclaimer indicating that the tariff schedule is not dispositive, the tariff schedule is nonetheless a factor in determining the scope of the Order. *Smith Corona*, 915 F.2d at 687; *Star–Kist Foods, Inc. v. United States*, 45 C.C.P.A. 16, 18 (1957). This

---

1. Eckstrom further argues that, since its cast fittings may be used in one, but *not more*, of the stated conditions of use, its fittings are clearly excluded from the scope of the Order. We do not find Eckstrom's reasoning persuasive.

2. A separate tariff provision applies to cast pipe, namely *eo nomine* tariff provision 7307.19.9080, HTSUS, which applies to "Tube or pipe fittings of iron or steel: Cast fittings: Other; Other; Other."

factor indicates that the Order does not cover cast fittings.

Finally, Eckstrom places great emphasis on the Order's heading stating that the covered fittings are *"welded* stainless steel" fittings, but this is, at best, only one additional factor to consider. While the recitation of "welded pipe" does suggest that the Order excludes cast fittings, the Government is correct in noting that the petition also mentions seamless pipe. Thus, the Order may not be limited to welded pipe. Still, welded pipe and seamless pipe are both types of wrought pipe and, as such, they have more in common with each other than with cast pipe, a notoriously inferior product.

Thus, the broad reading of the Order urged by the Government is in conflict with the language of the Order itself and must be rejected. *Wheatland Tube,* 161 F.3d at 1370. Indeed, the text of the Order favors Eckstrom's position that the Order does not cover cast pipe. Moreover, the underlying petition and the investigations and determinations by Commerce and the ITC conclusively establish that the Order does not cover cast pipe fittings.

## II. The Petition

The petition is clearly directed to wrought fittings, not cast fittings. The petition first states that the subject pipe fittings are classifiable under 7307.23 of the HTSUS. In contrast to the Order, the petition contains no disclaimer concerning the tariff classification. The petition then goes on to specify that the fittings contemplated are "designated under Specification ASTM·A403/A403M 1991, the standard specification for *Wrought* Austenitic Stainless Steel Pipe Fittings." (emphasis added). And, indeed, this ASTM specification states "[t]his specification does not apply to cast fittings," referring the reader to another set of specifications that does ad-

dress such fittings. Finally, the petition describes the manufacture of the subject pipe fittings, referring to techniques that are inapplicable to cast fittings. Specifically, the petition notes that the subject fittings are:

generally cold formed from fusion-welded stainless steel pipe. However, production of some types of stainless steel fittings, notably "stub ends," requires heating the raw material and performing forging operations.

These techniques are never used to manufacture cast fittings, which are simply formed by molding molten metal. Thus, it is clear that the petition did not cover cast pipe fittings, and the Government's arguments to the contrary are simply not credible.

## III. The Fair Value and Injury Investigations

A review of the "fair value" investigation by Commerce and of the "injury" investigation by the ITC, pursuant to 19 U.S.C. §§ 1673(1) and 1673(2), respectively, further indicates that cast fittings are not within the scope of the Order. In conducting its "fair value" investigation, Commerce published an Initiation Notice and a Preliminary Determination. 57 Fed.Reg. 103 (Dep't Commerce May 28, 1992) (initiation of investigations); 57 Fed.Reg. 247 (Dep't Commerce Dec. 23, 1992) (preliminary determination). Both of these documents, however, closely track the language of the ultimate Antidumping Order, and, therefore, provide little additional information concerning the scope of the Order. In contrast, ITC's injury investigation was clearly directed to wrought pipe fittings. The questionnaires sent out by the ITC, to gauge injury to United States manufacturers, stated that the merchandise subject to the investigation was "[f]ormed or forged stainless steel product." As noted above,

cast fittings cannot be considered formed or forged products. In addition, the questionnaires stated that the subject fittings were "provided for in subheading 7307.23.00 of the Harmonized Tariff Schedule of the United States (HTS)." As also noted above, this tariff schedule does not apply to cast fittings. Thus, the ITC's injury investigation did not encompass cast fittings.[3]

### IV. Final Determination by Commerce and ITC

As with the initial investigation and preliminary determination, the final determination by Commerce repeats the language of the final Order and, therefore, does not serve to clarify further the scope of the Order. In contrast, the final determination by the ITC again confirms that cast fittings are not properly included within the scope of the Order.

The ITC's final injury determination begins by declaring that: "an industry in the United States is materially injured by reason of imports from Taiwan of certain stainless steel butt-weld pipe fittings, whether finished or unfinished, under 14 inches inside diameter, provided for in subheading 7307.23.00 of the Harmonized Tariff Schedule of the United States . . . ." *Certain Stainless Steel Butt–Weld Pipe Fittings From Taiwan,* Inv. No. 731–TA– 564, USITC Pub. No. 2641 (June 1993). Thus, the ITC's finding of material injury was directed to fittings classifiable under HTSUS 7307.23.00, which does not cover cast fittings. The ITC's final determination then goes on to describe in further detail the pipe fittings investigated, incorporating by reference the product descrip-

tion in its investigation directed to pipe fittings imported from Korea: *Certain Stainless Steel Butt Weld Pipe Fittings From Korea,* Inv. No. 731–TA–563 (Final), USITC Pub. No. 2601 (June 1993). The product description in the Korean Determination begins as follows:

> Stainless steel butt-weld pipe fittings are used to connect pipe sections where conditions require permanent, welded connections and resistance to corrosion or oxidation *and* extreme temperatures *as well as* the ability to withstand pressure.

*Id.* at I–3 (emphasis added). As noted above, cast fittings cannot be used in conditions involving extreme temperatures and pressure. The Korean Determination then goes on to describe the manufacturing process for the subject pipe fittings as follows:

> Generally, stainless steel butt-weld pipe fittings are cold formed from fusion-welded or seamless stainless steel pipe. However, production of some types of fittings, notably stub-ends, requires heating the raw material and performing forging operations.

*Id.* at I–6. As also noted above, such manufacturing processes are inapplicable to cast fittings. Thus, the ITC's final determination further demonstrates that the Order does not include cast fittings.

### V. Commerce's Scope Determination and Formal Scope Inquiry

Finally, we also review Commerce's prior scope determinations, including its formal scope inquiry on remand. These additional materials, however, provide little additional guidance. Commerce's initial

---

**3.** Because we conclude that the totality of the evidence indicates that the Order does not cover cast pipe, we do not reach the question of whether the fact that the injury investigation did not encompass cast pipe, standing alone, could conclusively establish that the Order does not cover cast pipe. *See* 19 U.S.C. § 1673; *Wheatland Tube,* 161 F.3d at 1370– 71.

**1076**

scope determination, conducted in response to Eckstrom's August 1997 request, relies on the same arguments now advanced by the Government and addressed above. Similarly, Commerce's scope redetermination on remand does not add to the analysis provided by the Government on appeal. On remand, Commerce conceded that it could not conclusively determine that the Antidumping Order covered Ecktrom's cast pipe fittings and initiated a formal scope inquiry pursuant to 19 C.F.R. § 351.225(k)(2). In conducting this inquiry, Commerce considered additional factors, namely (1) the physical characteristics of the product, (2) the expectations of the ultimate purchasers, (3) the ultimate use of the product, (4) the channels of trade in which the product is sold, and (5) the manner in which the product is advertised and displayed. 19 C.F.R. § 351.225(k)(2). By the terms of this regulation, however, Commerce may only look to the factors enumerated in 19 C.F.R. § 351.225(k)(2) if its consideration of the order in light of the underlying petition, investigations, and determinations is not dispositive. *Id.* Because we have concluded that the inquiry under 19 C.F.R. § 351.225(k)(1) conclusively demonstrates that the Order does not include Eckstrom's cast pipe fittings, we hold that Commerce erred by proceeding to an analysis under 19 C.F.R. § 351.225(k)(2), and we decline to review this analysis.

## CONCLUSION

A review of all of the evidence indicates that Commerce's conclusion that the Antidumping Order at issue covers cast pipe fittings, such as those imported by Eckstrom, is not supported by substantial evidence. Indeed, the overwhelming evidence indicates that the Order does not cover cast pipe fittings. Accordingly, Commerce's scope determination is reversed.

*REVERSED.*