WALLACH, Circuit Judge,
dissenting.
The majority fails to ground its analysis in the plain language of the scope of the investigation, as defined in the antidump-ing and countervailing duty orders for MCBs (“the Orders”), and instead focuses on the petition of a domestic producer, contrary to the governing regulation. Because I would affirm the decision of the Court of International Trade (“CIT”), I respectfully dissent.
Fedmet’s merchandise has concentrations of magnesia and carbon falling within the scope of the Orders. The majority nevertheless holds Commerce erred in finding Fedmet’s magnesia alumina carbon (“MAC”) bricks were subject to the Orders because the (k)(1) sources “disclaim” MAC bricks. The trouble is that the (k)(1) sources never define the “disclaimed” MAC bricks except to say they have different features, uses, and prices than MCBs. Some MCBs with added alumina were in fact investigated as MCBs during the Commission’s investigation, and none of the (k)(1) sources address how much alumina must be added before MCBs become MAC bricks that fall outside the scope of the Orders. Instead, the (k)(1) sources indicate that any MCBs with the recited carbon and magnesia concentrations would possess MCBs’ characteristic strength and usefulness. Substantial record evidence supports Commerce’s finding that the (k)(1) sources do not dispositively resolve whether Fedmet’s products are MCBs covered by the Orders, or are instead MAC bricks with different characteristics, uses, and prices. It was thus proper for Commerce to consider the (k)(2) sources.
In holding otherwise, the majority fails to defer to Commerce’s factual findings with respect to industry terminology, and instead makes its own contrary findings that are unsupported by the record. It also criticizes Commerce for failing to specifically define MCBs and MAC bricks in its Orders, even though binding regulation states “the descriptions of subject merchandise ... must be written in general terms.” 19 C.F.R. § 351.225(a) (2009) (emphasis added). Finally, the majority relies heavily on a domestic producer’s petition instead of grounding its analysis in the plain language of the Orders, as required by this court’s precedent. Because the record supports Commerce’s finding that adding 8 to 15% alumina to otherwise dutiable MCBs does not remove them from the scope of the Orders, I would affirm.
A scope ruling involves a “highly fact-intensive and case-specific determination,” King Supply Co. LLC v. United States, 674 F.3d 1343, 1345 (Fed.Cir.2012), which is “particularly within the expertise of [Commerce],” Sandvik Steel Co. v. United States, 164 F.3d 596, 600 (Fed.Cir.1998). “Commerce enjoys substantial freedom in conducting such scope inquiries,” Eckstrom Indus., Inc. v. United States, 254 F.3d 1068, 1072 (Fed.Cir.2001), and this court must affirm Commerce’s determination as long as it is supported by substantial evidence, Sango Int’l L.P. v. United States, 484 F.3d 1371, 1378 (Fed.Cir.2007).
“[T]he plain language of the ... order is paramount” in conducting a scope ruling. King Supply, 674 F.3d at 1345. “[T]he *924 first step in a scope ruling proceeding is to determine whether the governing language is in fact ambiguous.” ArcelorMittal Stainless Belg. N.V. v. United States, 694 F.3d 82, 87 (Fed.Cir.2012). The Orders in this case define MCBs as having “a magnesia component of at least 70 percent magnesia ... by weight” and “carbon levels ranging from trace amounts to 30 percent by weight.” J.A. 18.122. Fedmet’s merchandise contains “approximately 75 to 90 percent magnesia and 3 to 15 percent carbon,” and thus “fall[s] squarely within the ranges identified in the scope of the Orders.” See J.A. 367. The Orders further state that MCBs may have added antioxidants “from trace amounts to 15 percent by weight as various metals, metal alloys, and metal carbides,” J.A. 18.122, and Fedmet’s merchandise contains alumina at a concentration of 8 to 15%. Finally, the Orders state MCBs are classifiable under, inter alia, Harmonized Tariff Schedule of the United States (“HTSUS”) 6902.10, which is the subheading covering Fedmet’s merchandise.[1] See J.A. 345, 347.
“Based on the magnesia and carbon content alone,” Commerce found Fedmet’s merchandise “f[e]ll within the scope of the Orders,” but it identified a “potential ambiguity regarding whether the ... scope covers MCBs with alumina.” See J.A. 367. To resolve this question, Commerce considered the (k)(l) sources, which are “[t]he descriptions of the merchandise contained in the petition, the initial investigation, and the determinations of [Commerce] (including prior scope determinations) and the Commission.” See 19 C.F.R. § 351.225(k)(l) (emphasis added).
The (k)(1) sources in this case include the Commission’s investigation and injury determinations. The Commission’s pricing investigation included MCBs with 4.6% added alumina, J.A. 370, which were also mentioned in the Commission’s injury determination, see J.A. 18.23 & n. 135 (stating the Commission “collected quarterly f.o.b. pricing data for three MCB products” including “Resco’s brand Maxline 10 AFX”); see also J.A. 309-10 (finding the Maxline 10 AFX was an “MCB with alumina”), 323, 370, 438, 459.[2] Although 4.6% is less than the 8 to 15% alumina contained in Fedmet’s merchandise, the inclusion of MCBs with alumina demonstrates that simply adding alumina to otherwise subject MCBs does not automatically withdraw them from the scope of the Orders.
The remaining (k)(l) sources do not dis-positively show that MCBs with 8 to 15% alumina are excluded from the Orders. To the contrary, Resco’s petition emphasizes that the combination of carbon and magnesia in MCBs results in “[h]igh thermal conductivity, ... [rjeduced porosity, ... [h]igh corrosion resistance^ and] [g]ood reaction to alkaline environments.” J.A. 499. Fedmet’s products contain the requisite concentrations of carbon and magnesia, suggesting they share these characteristics. Resco’s petition states MCBs had different characteristics and uses than other refractory bricks (including MAC bricks), but did not define the different types of refractory bricks. Nor did Resco suggest how much alumina must be added to MCBs before they become MAC bricks with characteristics “unique” from MCBs. See J.A. 498.
*925 Resco’s questionnaire responses also demonstrate the (k)(1) sources are not dis-positive with regard to the amount of alumina needed to transform an MCB into a MAC brick. On August 10, 2009, in response to Commerce, Resco stated “[t]he scope of our petition focuses only on MCB.” J.A. 506. However, four days later, Resco revised the scope language to remove the explicit exclusion of alumina carbon bricks, alumina-silicon bricks and dolomite class bricks, and confirmed the exclusion was unnecessary since the bricks did not have the requisite magnesia levels specified by Resco. See J.A. 513. These questionnaire responses necessarily create petition ambiguity.
Furthermore, none of Resco’s questionnaire responses addresses the ambiguity posed by the Orders: whether adding 8 to 15% alumina withdraws otherwise-subject MCBs from the Orders’ scope. J.A. 506, 510, 513. There is no indication from the (k)(l) sources that Fedmet’s products are “MAC bricks” excluded by Resco’s petition and the Final Commission Determination. Commerce properly found the lack of “technical descriptions” made it impossible “to identify the chemical composition of MAC bricks.” J.A. 368. Commerce was supported by substantial evidence in finding the (k)(l) sources did not address, much less dispositively resolve, whether adding 8 to 15% alumina withdraws MCBs from the scope of the order.
The majority ignores this definitional problem. It states Resco “disclaim[ed] coverage of all MAC bricks in general.” Majority Op. at 919 (emphasis added). If adding any alumina to MCBs withdraws them from the Orders’ scope, the majority fails to explain how the Commission’s Final Determination could encompass MCBs with 4.6% added alumina. On the other hand, if adding only small amounts of alumina is insufficient to transform an MCB into a MAC brick, the majority does not identify any cutoff point. Indeed, the majority admits as much in stating “the (k)(l) sources do not mention, much less make a distinction, between so-called ‘low-alumina’ and ‘highalumina’ bricks.” Majority Op. 922.[3]
By failing to acknowledge this definitional problem, the majority leaves the Orders open to manipulation. Rather than paying the antidumping and countervailing duties on MCBs, importers can simply add small amounts of alumina to their products and label them MAC bricks instead of MCBs.
The majority nonetheless states MAC bricks were adequately defined based on Resco’s statement that MAC bricks and MCBs “ ‘do not have the same physical characteristics and uses are not perceived by producers and purchasers as substitutable and are easily differentiated by price.’ ” Majority Op. at 915 (quoting J.A. 396). But it never establishes whether Fedmet’s products fall within this definition of MAC *926 bricks, i.e., whether they have different physical characteristics from MCBs and are easily distinguishable by price.
Indeed, Commerce’s consideration of the (k)(2) factors demonstrates that Fedmet’s merchandise is not materially distinguishable from MCBs.[4] Commerce found that Fedmet’s merchandise “sharefs] physical characteristics with in-scope MCBs.” J.A. 485. It relied on the Millennium Steel study, which “specifically found that adding alumina to MCBs resulted in controlled expansion, better slag corrosion resistance, and enhanced ladle life due to better spalling resistance, all noted properties of MCBs.” J.A. 483 (emphasis added). Commerce found “carbon plays the critical role in preventing slag penetration when the magnesia content falls within the range identified in the scope of the Orders,” and “conclude[d] that carbon in Fedmet[’s merchandise] performs the same essential function as it does in MCBs.” J.A. 484. Commerce found this was consistent with the Orders, which include MCBs with metal additives of up to 15% as long as the prescribed levels of magnesia and carbon “ensure key properties of in-scope MCBs were met.” J.A. 484. Commerce also found Fedmet’s merchandise and MCBs “are sold in the same channels of trade and are similarly marketed and advertised for the same uses.” J.A. 485. Under any performance-based definition of the goods — which, in this case, is all that the (k)(l) sources provide— Fedmet’s merchandise is subject to the MCB Orders.
The majority’s holding to the contrary contravenes precedent by elevating certain purported “disclaimers” by Resco over the language of the Orders. This court has made clear that the language of an order is “paramount” in conducting a scope analysis. King Supply, 674 F.8d at 1345. But the majority mentions the Orders only once, and focuses primarily on Commerce’s “implicit[ ] ... understanding” based on Resco’s representations.[5] See Majority Op. at 919. The majority’s analysis is strikingly similar to that prescribed by the CIT in Duferco Steel, Inc. v. United States, 146 F.Supp.2d 913, 921-22 (Ct. Int’l Trade 2001). There, the CIT stated:
In determining whether a particular product is within the scope of an [anti-dumping] or [countervailing duty] order, Commerce must first consider whether the underlying petitions cover the product. If the petitions are ambiguous, Commerce must examine the preliminary and final determinations, prior notices of initiation, and any available ITC publications. If the scope of the particular product is still unclear, Commerce must look to other criteria, including an analysis of the [ (k)(2) criteria].
Id. (internal quotation marks and citations omitted). This court reversed the CIT, holding the CIT’s “description of this interpretive process has it exactly baek- *927 wards.” Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1096 (Fed.Cir.2002) (emphasis added). We explained “[t]he critical question is not whether the petition covered the merchandise or whether it was at some point within the scope of the investigation,” but instead “whether the [] final scope orders included the subject merchandise.” Id. The majority makes the same error as the CIT in Duferco by focusing only on whether Resco’s petition “covered the merchandise,” see id.; see also Majority Op. at 917 (considering whether Resco’s petition and other statements excluded MAC bricks). The majority fails to make the proper inquiry: whether substantial evidence supports Commerce’s finding that the Orders, properly interpreted under 19 C.F.R. § 351.225(k), cover Fedmet’s merchandise.
Even more concerning is the majority’s refusal to defer to Commerce’s expertise. This court has emphasized that “scope orders must necessarily be written in general terms, and [Commerce] enjoys substantial freedom to interpret and clarify its antidumping orders, in accordance with the methodology set forth in its regulation, 19 C.F.R. § 351.225(k).” Duferco Steel, 296 F.3d at 1096-97 (internal quotation marks and citations omitted). Yet the majority imposes a new duty on Commerce to specifically “define the scope of the orders.” Majority Op. at 922. It scolds Commerce for failing “to go beyond the ‘name’ of MAC bricks” and for not providing “any chemical composition or technical specification for MAC bricks.” Id.
Although it is apparent in hindsight that such a specific definition would be helpful in resolving this dispute, Commerce had no obligation to provide a “technical specification for MAC bricks.” Id. Section 351.225(a) instead provides that “the descriptions of subject merchandise contained in [Commerce’s] determinations must be written in general terms.” 19 C.F.R. § 351.225(a) (emphasis added). Commerce cannot be expected to predict every potential variation in imported merchandise in the original order. The majority violates § 351.225 in its new rule preventing Commerce from resolving ambiguity that results from “[Commerce’s] own failure to define non-subject merchandise more precisely than ‘by name.’ ” Majority Op. at 922.
The majority states that Commerce’s earlier decisions “cannot ... operate to create ambiguity ... in the underlying investigations,” even though Commerce’s decisions and the underlying investigations are both (k)(1) sources. Id. at 921. Ambiguity in any of the (k)(1) sources likely means they are not dispositive, requiring consideration of the (k)(2) factors. See 19 C.F.R. § 351.225(k). The majority’s refusal to take cognizance of certain ambiguities (i.e., the ambiguities in Commerce’s decisions) is unsupported by regulation. It is simply inappropriate for this court to dictate to Commerce which (k)(1) factors are more “germane” than others. See Majority Op. at 921; see also Cathedral Candle Co. v. U.S. Int’l Trade Comm’n, 400 F.3d 1352, 1363 (Fed.Cir.2005) (“[A]n agency’s interpretation of its own regulations is entitled to broad deference from the courts.” (citing Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994))).
Finally, the majority fails to defer to Commerce’s factual findings. For example, the majority finds “the terms [MCB] and [MAC brick] are ubiquitous and well-understood in the refractories industry,” Majority Op. at 921, a finding necessary to support its conclusion that Resco’s purported disclaimer of MAC bricks unambiguously removed Fedmet’s merchandise from the Orders’ scope. That finding, however, directly conflicts with Com *928 merce’s finding that “[a]ll parties acknowledge that there is no industry standard for MAC bricks.” J.A. 484 (emphasis added); see also Fedmet Res. Corp. v. United States, 911 F.Supp.2d 1348, 1351 (Ct. Int’l Trade 2013) (“All parties agree there is no standard chemical definition for bricks marketed as MAC[ bricks]” (citing Final Scope Ruling at 9; Pl.’s Reply 6)). The majority’s narrative — that Commerce “adopted this industry terminology” and “uriderst[ood] that other types of bricks such as MAC bricks would not be covered” — is nowhere in the record. Majority Op. at 920. The resulting conclusion that the (k)(l) sources unambiguously exclude Fedmet’s merchandise from the Orders is inconsistent with the record, and fails to defer to Commerce’s well-considered findings.[6] Our law requires deference the majority denies to these agency findings.
Because I would affirm the CIT’s decision upholding Commerce’s scope ruling, I respectfully dissent.

. “[T]he tariff schedule is ... a factor in determining the scope of the Order.” Eckstrom, 254 F.3d at 1073.

. The majority states "it is not clear that Resco would have been considered an 'interested party' for purposes of initiating the underlying investigations if they had encompassed MAC bricks.” Majority Op. at 920. However, Resco sold MCBs with 4.6% added alumina, which is only 3.4% less alumina than some of Fedmet's products.

. The majority explains this overlap between MCBs and MAC bricks by stating that any overlap was "surrendered by Resco’s failure to provide a technical definition or ‘cut off point’ when asked to be more specific.” Majority Op. at 921. The majority does not cite any authority for this new “surrender” doctrine nor does it explain how Resco’s purported "surrender” limits Commerce's discretion in interpreting the Orders’ scope. Commerce is an administrative agency. Its scope rulings warrant deference from this court and it is not limited by a petitioner’s inadequate responses. Indeed, the majority contradicts itself in stating that "the ambiguity in the scope language arises not because of the carbon and magnesia levels — which no party disputes are met by Fedmet's MAC bricks — but because the orders are limited to 'magnesia carbon brides.’ This limitation is clear and unambiguous.” Majority Op. at 921. If the language from the Orders regarding MCBs is clear and unambiguous then Fedmet should have challenged the CIT’s finding that the scope language itself was ambiguous, an assertion it did not make. See id. at 917 n. 4.

. Because the k(l) sources did not definitively resolve this question, Commerce rightly turned to the k(2) sources. See 19 C.F.R. § 351.225(k).

. In other contexts, the CIT has cautioned against overreliance on a domestic producer's petition. See, e.g., Yantai Xinke Steel Structure Co. v. United States, No. 10-00240, 2012 WL 2930182 (Ct. Int'l Trade July 18, 2012) ("[T]he petition constitutes nothing more than 'an allegation of dumping, not a determination of dumping.' ” (quoting Zhejiang Native Produce & Animal By-Prod. Imp. & Exp. Corp. v. United States, 2011 WL 3892223, at *9 (C.I.T. Sep. 06, 2011)) (citing Manual for the Practice of U.S. International Trade Law 595 (William K. Ince & Leslie A. Glick, eds. 2001))). By elevating Resco’s petition over the Orders themselves, the majority prioritizes Resco’s allegations over the final findings of the investigations as reflected in the language of the Orders.

. To the extent the CIT erred in relying on (k)(2) factors in its (k)(l) analysis, see Majority Op. at 922, such error is harmless. This court reviews the CIT de novo, and asks only whether substantial evidence supports Commerce’s determination.