Slip Op. 16-39

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CIRCLE GLASS COMPANY, | |
| Plaintiff, | |
| v. | Before: Leo M. Gordon, Judge |
| UNITED STATES, | Court No. 15-00002 |
| Defendant. | |

**OPINION**

[Final scope ruling sustained.]

Dated: April 20, 2016

David J. Craven and Saichang Xu, Riggle and Craven of Chicago, IL for Plaintiff Circle Glass Company.

Aimee Lee, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice of New York, NY for Defendant United States. On the brief with her were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Jeanne E. Davidson, Director, Reginald T. Blades, Jr., Assistant Director of Washington, DC. Of counsel on the brief was David P. Lyons, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce of Washington, DC.

Alan H. Price, Robert E. DeFrancesco, III, and Derick G. Holt, Wiley Rein LLP of Washington, DC for Defendant-Intervenor Aluminum Extrusions Fair Trade Committee.

Gordon, Judge: This action involves the scope of the antidumping and countervailing duty orders on aluminum extrusions from the People's Republic of China. See Final Scope Ruling on Circle Glass Co.'s Screen and Storm Door Grille and Patio Door Kits (Dep't of Commerce Dec. 5, 2014), available at http://enforcement.trade.gov/ download/ prc-ae/ scope/ 59-screen-storm-patio-door-kits-5dec14.pdf (last visited this date) ("Final Scope Ruling"); see also Aluminum Extrusions from the People's Republic

of China: Antidumping Duty Order, 76 Fed. Reg. 30,650 (Dep't of Commerce May 26, 2011) ("AD Order"); Aluminum Extrusions from the People's Republic of China: Countervailing Duty Order, 76 Fed. Reg. 30,653 (Dep't of Commerce May 26, 2011) ("CVD Order") (collectively, "Orders"). The U.S. Department of Commerce ("Commerce") determined that Plaintiff's patio screen door kits were within the scope of the Orders.

Before the court is Plaintiff Circle Glass Company's USCIT Rule 56.2 motion for judgment on the agency record. See Mem. in Supp. of Mot. for J. on the Agency R. Submitted by Pl. Circle Glass Co. Pursuant to R. 56.2 of the Rs. of the U.S. Ct. of Int'l Trade, ECF No. 24 ("Pl.'s Br."); see also Def.'s Resp. to Pl.'s R. 56.2 Mot. for J. upon the Agency R., ECF No. 29; Pl.'s Reply to Def.'s & Def.-Intervenor's Resps. to Pl.'s R. 56.2 Mot. for J. upon the Agency R., ECF No. 34 ("Pl.'s Reply"). The court has jurisdiction pursuant to Section 516A(a)(2)(B)(vi) of Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(2)(B)(vi) (2012),[1] and 28 U.S.C. § 1581(c) (2012). For the reasons that follow, the court sustains the Final Scope Ruling.

## I. Standard of Review

The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2012 edition, and all applicable supplements.

Steel Corp. v. United States, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr., Administrative Law and Practice § 9.24[1] (3d ed. 2015). Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." Jane C. Bergner, Steven W. Feldman, the late Edward D. Re, and Joseph R. Re, 8-8A, West's Fed. Forms, National Courts § 13342 (5th ed. 2015).

## II. Legal Framework

The language of the order itself is the "cornerstone" of a scope analysis and "a predicate for the interpretive process." Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1097 (Fed. Cir. 2007). Commerce first considers the scope language of the order itself, the descriptions contained in the petition, and how the scope was defined in the investigation and in the determinations issued by Commerce and the ITC. 19 C.F.R. § 351.225(k)(1) (2015); Duferco, id. at 1097. If the (k)(1) factors are dispositive,

Commerce issues a final scope ruling. See Eckstrom Indus., Inc. v. United States,
254 F.3d 1068, 1071 (Fed. Cir. 2001). If the (k)(1) factors are not dispositive, Commerce
analyzes the Diversified Products criteria under subsection (k)(2) of its regulations: (1) the
physical characteristics, (2) the expectations of ultimate purchasers, (3) the ultimate use,
(4) the channels of trade in which the product is sold, and (5) the manner of advertising
and display. 19 C.F.R. § 351.225(k)(2). In this action Commerce determined that the
(k)(1) factors were dispositive. Final Scope Ruling at 12. Plaintiff does not argue that the
(k)(2) factors should be considered. See Pl.'s Br. at 3-25.

### III. Scope of the Orders

The Orders cover "aluminum extrusions," which are "shapes and forms, produced
by an extrusion process, made from [certain] aluminum alloys." AD Order, 76 Fed. Reg.
at 30,650; CVD Order, 76 Fed. Reg. at 30,653. "Subject aluminum extrusions may be
described at the time of importation as parts for final finished products that are assembled
after importation, including, but not limited to, window frames, door frames, solar panels,
curtain walls, or furniture." AD Order, 76 Fed. Reg. at 30,650-51 (emphasis added); CVD
Order, 76 Fed. Reg. at 30,654. "Such parts that otherwise meet the definition of aluminum
extrusions are included in the scope." AD Order, 76 Fed. Reg. at 30,651; CVD Order,
76 Fed. Reg. at 30,654.

The scope also excludes "finished goods containing aluminum extrusions that are
entered unassembled in a 'finished goods kit.'" AD Order, 76 Fed. Reg. at 30,651;
CVD Order, 76 Fed. Reg. at 30,654. A "finished goods kit" is a "packaged combination of
parts that contains, at the time of importation, all of the necessary parts to fully assemble

a final finished good and requires no further finishing or fabrication, such as cutting or punching, and is assembled 'as is' into a finished product." AD Order, 76 Fed. Reg. at 30,651; CVD Order, 76 Fed. Reg. at 30,654. The only issue here is whether the subject patio screen door kits qualify for the "finished goods kit" exception.

## IV. Discussion

Plaintiff imports "patio screen door kits" without screens. Response to Supplemental Questionnaire, 4-5 & Exs. S-1, S-4(b) (Dep't of Commerce Aug. 11, 2014), PD 18. The kits include: (1) four pieces of extruded aluminum, (2) a plastic handle, (3) a steel latch, (4) a strike (a component necessary for the assembled product to function as a door), (5) four steel "roller/corner" combination units, and (6) fasteners. Id. at 3-4. Even though the subject screen door kits do not include screens, Plaintiff argued to Commerce that its merchandise nevertheless qualified for the "finished goods kit" exclusion because Plaintiff's screen door kits without screens, when imported, contained all necessary parts to fully assemble a final finished good, and is assembled 'as is' into a finished product. Id. To be clear, Plaintiff was arguing that its screen door without a screen, basically an empty aluminum door frame, was nevertheless, a finished final good or finished product within the meaning of the "finished goods kit" exclusion. Commerce did not agree, concluding that a "screen door" without a "screen" was not a final finished good within the exclusion:

The plain language of the scope excludes "finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl[ . . . .]" Accordingly, if a door is imported into the United States without glass or vinyl in the designated place in the door, according to the language of the scope, that door would not be considered "finished merchandise." Likewise, the same is true with a screen door that is imported into the United States without the screen in the designated place for the screen. Because no screen is included with the patio door kit at the time of importation, similar to the kits lacking the glass panel in [the less than fair value investigation], Circle Glass's patio door kit does not meet the exclusion that requires "all of the necessary parts to fully assemble a final finished good."

Circle Glass cites to [Solar Panel Mounts], asserting that the fact that its patio door kit does not include a non-essential part, the screen, is insufficient to render the patio screen door kit unfinished. In [Solar Panel Mounts], the Department found the solar panel mounting system kits to contain all the parts necessary to construct a complete finished good (i.e., a solar panel mounting system) and that the mounting systems were finished goods in their own right. The Department stated that the mounting systems were designed to work with removable/replaceable components (i.e., solar panels) and need not include these non-essential components to constitute a finished mounting system. Conversely, in the case of Circle Glass' patio door kit, we determine that Circle Glass' patio door without a screen is not a finished patio screen door absent the screen, as we consider a patio door to be akin to windows or doors, which are only excluded from the scope as "finished windows with glass" and "doors with glass or vinyl".

. . . .

. . . [A]s Petitioner notes, this case is similar to [Event Décor]. In [Event Décor], the Department found Gorilla Pipes to be in scope, despite containing non-extruded materials, because the product otherwise satisfied the parameters of the scope. The Department determined that individual Gorilla Pipes were included in the scope of the Orders because they did not contain all parts necessary to fully assemble a complete, finished product (i.e., a display structure). Thus, our determination that Circle Glass' patio door kit, without the screen, is in-scope is consistent with our determination in [Event Décor], because, similarly, here we find Circle Glass' patio door kits to be incomplete as they do not contain all parts necessary to assemble a complete, finished product (i.e., a complete patio screen door).

Final Scope Ruling at 13-14 (citing  Issues and Decision Memorandum for the Final Determination in the Less-Than-Fair-Value Investigation of Aluminum Extrusions from the People's Republic of China, A-570-967, at 21-22 (Dep't of Commerce Apr. 4, 2011), available at http://enforcement.trade.gov/ frn/summary/ prc/2011-7927-1.pdf (last visited this date) ("LTFV I&D Memo"); Final Scope Ruling: Shower Door Kits, 6 (Dep't of Commerce Nov. 7, 2011), available at http://enforcement.trade.gov/ download/ prc-ae/ scope/ 06-Shower-door-kits-20111107.pdf (last visited this date)); Final Scope Ruling on Clenergy (Xiamen) Technology's Solar Panel Mounting Systems, 8-9 (Dep't of Commerce Oct. 31, 2012), available at http://enforcement.trade.gov/ download/ prc-ae/ scope/ 21-Clenergy-Solar-Panel-Mounting-Systems-20121031.pdf (last visited this date) ("Solar Panel Mounts"); Final Scope Ruling on Traffic Brick Network, LLC's Event Décor Parts and Kits, 10 (Dep't of Commerce Dec. 2, 2013), available at http://enforcement.trade.gov/ download/ prc-ae/ scope/ 35-event-decor-parts-kits-5dec13.pdf (last visited this date) ("Event Décor")) (footnotes omitted).

Now before the court Plaintiff again argues that its merchandise is a patio screen door kit without the "screen" and that such a product is a "final finished good" excluded from the scope of the Orders. Pl.'s Reply at 3-4. Plaintiff takes great care never to describe its product as a door frame, always maintaining that its product is a patio screen door just without the screen. Like Commerce, the court does not agree. Commerce reasonably explained that Plaintiff's "patio door kit," using only the parts available upon importation, essentially assembles into an empty frame made of extruded aluminum. See Final Scope Ruling at 13 (citing LTFV I&D Memo at 21-22). Commerce's conclusion that Plaintiff's

patio screen door kits are not "finished goods kits" because they lack all the necessary components to assemble a complete patio screen door therefore strikes the court as not only reasonable, but correct.

## V. Conclusion

Plaintiff's "patio screen door kit" as imported assembles into an empty door <u>frame</u>, not a "complete" screen door. This simple fact cannot be overcome. Plaintiff imports an aluminum door frame kit, and those kits do not fit within the "finished goods kits" exclusion in the <u>Orders</u>. The court sustains the <u>Final Scope Ruling</u>. Judgment will enter accordingly.


                                                        /s/ Leo M. Gordon
                                                     Judge Leo M. Gordon



Dated: April 20, 2016
          New York, New York